No. 64,285

ALLIED MUTUAL INSURANCE COMPANY, *Plaintiff*, v. KEVIN S. GORDON, *et al., Defendants*, and ROBERT L. HARDING, *Defendant/ Cross-claim Plaintiff/Appellee/Cross-Appellant*, and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Defendant/ Cross-claim Defendant/Appellant/Cross-Appellee*.

(811 P.2d 1121)

Opinion filed May 24, 1991.

*Michael R. O'Neal*, of Gilliland & Hayes, P.A., of Hutchinson, argued the cause and was on the briefs for appellant State Farm Mutual Insurance Company.

*Gerald W. Scott*, of Gerald W. Scott, P.A., of Wichita, argued the cause and was on the briefs for appellee Robert L. Harding.

*David P. Calvert*, of Wichita, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal by the defendant, State Farm Mutual Automobile Insurance Company (State Farm Mutual), from a judgment awarding $99,621.55 in underinsured motorist benefits to Robert Harding (defendant/cross-claim plaintiff). Robert Harding cross-appeals from the judgment of the district court denying attorney fees as not appropriate in an underinsured motorist action.

## UNDERLYING AUTOMOBILE ACCIDENT

The underlying facts were not disputed by the parties. Kevin Gordon, a 16-year-old, ran a stop sign and collided with a truck driven by Orville West. West's wife, Willa West, was a passenger in his vehicle and received personal injuries. West's truck collided with a vehicle driven by Harding. As a result of the collision, Harding received serious injuries to his right ankle and left hip, causing permanent disability. In the future, he will probably need to have a fusion of his ankle and a hip replacement. At the time of the accident, Harding was acting within the scope of his employment as a laborer with a roofing crew and, therefore, received workers compensation benefits through State Farm Fire & Casualty (State Farm Casualty).

## DISTRICT COURT PROCEEDINGS

Gordon's insurer, Allied Mutual Insurance Company (Allied), filed an interpleader action against all the parties who might have claims against Gordon and tendered the policy liability limit of $60,000 into court for apportionment among the parties. Harding answered the interpleader petition and cross-claimed against Gordon and West, alleging their negligence. Harding also filed a cross-claim against his automobile insurer, State Farm Mutual, alleging that under his policy he was entitled to receive underinsured motorist benefits "in an amount equal to $100,000 less the amount of personal injury damages he received from Kevin Gordon."

State Farm Mutual answered the interpleader, alleging that State Farm Casualty had a subrogation interest because it provided workers compensation benefits and, therefore, "is subrogated to all or part of any recovery which Mr. Harding may have

as a result of this accident." An amended petition was filed in the interpleader action, joining State Farm Casualty under its subrogation lien. State Farm Casualty filed a cross-claim against Gordon and West, claiming a subrogation lien on all recovery by Harding from Allied or any defendant pursuant to K.S.A. 1990 Supp. 44-504(b). This statute provides that if an injured worker who has received workers compensation benefits recovers

"by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien." K.S.A. 1990 Supp. 44-504(b).

Section III of Harding's policy with State Farm Mutual concerning uninsured motorist coverage provides: "We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*." The definition of uninsured motor vehicle includes an "underinsured" vehicle, which is a motor vehicle that is insured for bodily injury liability at the time of the accident, but has a liability limit of less than the limit the insured carries for uninsured motor vehicle coverage under this State Farm Mutual policy. Because Harding's policy provided a $100,000 uninsured motor vehicle liability limit for each person, while Gordon's policy had a liability limit of $60,000, Gordon is an underinsured motorist.

Under the limits of liability pertaining to underinsured vehicles, the policy provides that the amount of coverage for each person is "the amount of coverage for all damages due to *bodily injury* to one *person*." The policy then states:

"b.  The maximum total amount payable to all *insureds* is the difference between the 'each accident' limit of liability of this coverage and the amount paid to all *insureds* by or for any *person* or organization who is or may be held legally liable for the *bodily injuries*.

"Subject to the above, the most we pay any one *insured* is the lesser of:

"(1) the difference between the 'each person' limit of liability of this coverage and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or

"(2) the difference between the amount of the *insured's* damages for *bodily injury* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*."

An additional limitation on liability for uninsured/underinsured motorists provides:

> "3. Any amount payable under this coverage shall be reduced by any amount paid or payable for the same damages to or for the *insured*:
>
>   "a. for *bodily injury* under the liability coverage; or
>
>   "b. under any worker's compensation law."

The policy lists several circumstances when coverage is excluded, including the following:

> "THERE IS NO COVERAGE:
>
>   1. FOR *BODILY INJURY* TO ANY *INSURED* WHO OR ON WHOSE BEHALF ANY *PERSON* SHALL ACCEPT A SETTLEMENT OR SECURE A JUDGMENT THAT PREJUDICES OUR RIGHT TO RECOVER OUR PAYMENT. This does not apply if we have given our written consent to the settlement agreement or judgment.
>
>   . . . .
>
>   4. TO THE EXTENT IT BENEFITS:
>
>   a. ANY WORKER'S COMPENSATION INSURANCE COMPANY."

If an underinsured motorist coverage insurer pays benefits under such coverage, the insurer is subrogated to any cause of action in tort that the person receiving the benefits may have "against any other person or organization legally responsible for the bodily injury or death because of which such payment is made." K.S.A. 40-287. This statute further provides:

> "[T]he insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may thereafter result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death for which payment is made by the insurer." K.S.A. 40-287.

The procedure for enforcing these subrogation rights is set forth at K.S.A. 1990 Supp. 40-284(f), as follows: "If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured." The insurer has 60 days to substitute its payment for that of the tentative settlement amount to be subrogated to the insured's right to recover such payment and any settlement. If the insurer fails to pay within 60 days, then the insurer has no right to subrogation for any amount paid under the underinsured motorist coverage. K.S.A. 1990 Supp. 40-284(f).

To comply with 40-284(f), counsel for Harding mailed a certified demand letter, dated September 24, 1987, informing State Farm Mutual that Allied had tendered its policy limit of $60,000 to the court, amounting to a tentative offer of policy limits and triggering the 60-day time limit to allow the tentative settlement or substitute payment under 40-284(f). Harding mailed State Farm Mutual two additional certified demand letters. State Farm Mutual did not intervene in the interpleader action and did not substitute payment of any amount to Harding. On June 6, 1988, defendant Gordon filed an amended offer consenting to judgment under K.S.A. 60-2002(b). Gordon offered to allow judgment to be entered in favor of Harding and State Farm Casualty against Gordon for $180,000. This figure represented the itemized estimate of $200,000 total compensatory damages, with 90% fault attributed to Gordon and 10% to West. This offer was accepted by Harding on June 6, 1988.

By letter dated June 8, 1988, Harding informed State Farm Mutual of a settlement agreement with Farmers Insurance Company (Farmers), Orville West's insurer, to pay Harding a $20,000 liability payment and to waive West's and Farmers' interest in the interpled $60,000. The letter further advised State Farm Mutual that a hearing on the offer of judgment and its acceptance was scheduled for June 17, 1988. State Farm Mutual responded in a letter dated June 15, 1988, noting that it chose not to intervene in the interpleader action and did not approve the proposed settlement, but believed its approval was not necessary for entry of the judgment in favor of Harding against Gordon.

Harding accepted the $20,000 settlement offer from West and his insurer, Farmers. As part of the settlement, West and Farmers disclaimed any interest in the $60,000 interpled by Allied, and Harding released his claims against West and Farmers, who were dismissed from the suit with prejudice. Farmers issued its check in the amount of $20,000 payable to State Farm Casualty, showing Harding as claimant.

On June 16, 1988, a hearing was conducted concerning the workers compensation settlement between Harding and State Farm Casualty. This settlement required the $20,000 received from West and Farmers, and the amount interpled by Allied on

behalf of Gordon, to be paid to State Farm Casualty under its subrogation lien.

The hearing on the acceptance of the offer of judgment between Gordon and Harding occurred on June 17, 1988. At this hearing, the court entered judgment against Gordon in favor of Harding.

On July 1, 1988, the court ordered the interpled funds of $60,000 and interest paid to State Farm Casualty. Counsel for State Farm Mutual received notice of the hearing but did not attend. On July 6, 1988, the journal entry of dismissal of Harding's claims against West was filed. On July 7, 1988, the clerk of the district court, using a cashier's check, paid the interpled funds and interest totaling $62,267.81 directly to State Farm Casualty.

A pretrial statement for the bench trial between Harding and State Farm Mutual designated the following issues:

1. How should State Farm Mutual's policy be construed regarding underinsured motorist coverage?

2. Was Harding "paid" $60,000 and $20,000 from Gordon and West, respectively?

3. Did Harding lose his claim to underinsured motorist benefits by settlement with West without the knowledge or consent of State Farm Mutual?

Harding contended that he was not "paid" $80,000 from Gordon and West because those payments went directly to State Farm Casualty under its workers compensation subrogation lien; that he was entitled to underinsured motorist benefits in the full amount of $100,000; and that the workers compensation payment to State Farm Casualty was not for the "same damages" as he sought to have paid by underinsured motorist coverage. State Farm Mutual contended Harding did receive $80,000 from Gordon and West before passing that money to State Farm Casualty, which should reduce the amount of underinsured motorist benefits recoverable by Harding to $20,000. Alternatively, State Farm Mutual alleged that Harding could not recover any underinsured motorist benefits because Harding failed to properly notify State Farm Mutual of his settlement with West, thus forfeiting his right to those benefits.

## DISTRICT COURT DECISION

The district court made 32 findings of fact and 21 conclusions of law, including the following:

"1. At the time of the West/Farmers settlement, State Farm Mutual had made no uninsured or underinsured motorist payment, and thus had no subrogation rights. [Citation omitted.]

. . . .

"3. State Farm Mutual waived its subrogation rights against Kevin S. Gordon by failing to respond to the various K.S.A. 40-284(f) demands made by Robert L. Harding.

. . . .

"10. That a subrogated underinsured insurer could collect liability benefits owed the insured for separate damages owed by an insured person other than the underinsured motorist runs contrary to the purpose of underinsured motorist insurance and the public policy of the state of Kansas.

"11. . . . Gordon is the legally responsible person whose negligence caused 'such payment' to be made and Kevin S. Gordon is the sole person against whom subrogation rights may exist.

. . . .

"15. State Farm Mutual Automobile Insurance Company's 'consent-to-settle' exclusion is not authorized by K.S.A. 40-284(e)(5) and is unenforceable as an unauthorized limitation of the mandated underinsured motorist coverage. [Citations omitted.]

"16. After receiving notice of the pending settlement with [West and Farmers,] June 8, 1988, . . . State Farm Mutual raised no claim to UIM subrogation rights to the West/Farmers tort settlement, but rather on June 21, 1988, . . . caused a change in the settlement documents and attempted to cause a change in the manner of payment of proceeds from the settlements and judgments. This conduct was 'written consent' to the West settlement and constitutes a waiver of any claim that the settlement voided the underinsured motorist coverage under its 'consent-to-settle' exclusion. State Farm Mutual is by its conduct estopped from claiming a forfeiture of underinsured motorist benefits.

"17. After notice was given to State Farm Mutual under *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199, State Farm Mutual had the option to intervene which they chose not to exercise. Having not intervened, State Farm Mutual Automobile Insurance Company is bound by the settlements made by Robert L. Harding.

. . . .

"[19.] Both the Gordon interpled funds and interest, $64,267.81, and the West settlement funds, $20,000.00, were 'paid' to State Farm Casualty and no money was 'paid' to Robert L. Harding, the defined 'insured.' "

The court concluded that $99,621.55 of Harding's damages were not "the same damages" as those paid under workers compensation benefits based upon the following calculations:

"1. Pain and suffering, disabilities (other than wage
loss), disfigurement, and mental anguish    $67,522.07

"2. The reasonable expenses of necessary medical care,
hospitalization and treatment received to date    20,692.88

"3. The reasonable expense of necessary medical care,
hospitalization and treatment reasonably certain to
be needed in the future
Ankle arthrodesis (fusion)

| | | |
|---|---|---|
| Surgical fee | 1,200.00 | |
| Hospital charges | 5,000.00 | |
| Total hip replacement | | |
| Surgical fee | 2,750.00 | |
| Hospital charges | 10,000.00 | |
| | | 18,950.00 |

"4. Loss of time or income to date by reason of your
disabilities to date
67 weeks at $264.60    17,728.20

"5. Loss of time or income which you are reasonably
certain to lose in the future
19 weeks (6-6 to 10-16-88)
260 weeks (5 years)
279 weeks at $264.60    73,823.40

*Less workers comp. past medical*    **-20,095.00**

*Less workers compensation recovery (TT)*    **-7,520.00**

*Less workers compensation recovery for TT
and future medical*    **-71,480.00**

*Total Non-duplicative Personal Injury Damages*    **$99,621.55"**

The court entered judgment in favor of Harding "for $99,621.55,
plus interest, attorney fees, and cost" but, one paragraph later,
stated that the motion for attorney fees is "disallowed because
attorney fees are not appropriate in an underinsured motorist
case."

## COURT OF APPEALS DECISION

The Court of Appeals rejected State Farm Mutual's argument
that the findings of fact were inadequate, noting that the district
court's findings were sufficient to apprise the parties of its reasons
for reaching the result it did, as required by K.S.A. 60-252(a).
The Court of Appeals also rejected State Farm Mutual's argument
that the district court decided issues not contained in the pretrial
order when it concluded that State Farm Mutual waived its sub-
rogation rights against Gordon by failing to respond to the K.S.A.

1990 Supp. 40-284(f) demands by Harding. The application of 40-284(f) was specifically listed as an issue in the pretrial order and the parties had submitted the entire case for a decision. The Court of Appeals also rejected State Farm Mutual's argument that the district court should not have allowed prejudgment interest or considered the issue of attorney fees. The Court of Appeals found that the district court did not abuse its discretion in awarding prejudgment interest from the date judgment was entered on the unliquidated claim against Gordon. Neither Harding nor State Farm Mutual sought review of the above issues, and we find the above disposition by the Court of Appeals to be correct and it is affirmed.

The Court of Appeals then considered State Farm Mutual's claim that the district court erred in interpreting its insurance policy to allow underinsured motorist coverage without deducting the amounts paid to State Farm Casualty from Gordon and West. The court interpreted the policy to mean that "the insured is entitled to underinsured motorist benefits of $100,000 less any money *paid to* the insured by any person legally liable for the bodily injury the insured sustained in the accident." The Court of Appeals rejected Harding's argument that he did not receive the $80,000 because it was paid to State Farm Casualty under its subrogation lien, concluding that, in this case, State Farm Casualty "stepped into Harding's shoes to accept payment from the tortfeasors." The court found that payment to State Farm Casualty was payment to Harding. Because the tortfeasors owed a debt to Harding and Harding allowed the payment to go to State Farm Casualty, the debt to Harding was erased with the payment.

Having concluded that the $80,000 was "paid to" Harding, the court also found that the payment was for the "same damages" payable under State Farm Mutual's uninsured motorist coverage. The court reasoned that one accident occurred, and Harding sought to recover from three different groups: his employer for workers compensation benefits, the tortfeasors for damages, and his insurance company for uninsured motorist coverage. The Court of Appeals found no reason to conclude that the workers compensation benefits were not paid for the same damages as those available from traditional tort recoveries. Therefore, under

the terms of the policy, Harding was paid $80,000 for the same damages, even though those payments were directed to State Farm Casualty. The Court of Appeals concluded that Harding was entitled to the difference between the $80,000 payment and his policy limit of $100,000, leaving a balance of $20,000. This decision reversed the finding of the district court on this issue.

Third, the Court of Appeals agreed with the district court's finding that Harding's settlement with West did not bar recovery of underinsured motorist coverage. Discussing this court's decision in *Bartee v. R.T.C. Transportation, Inc.*, 245 Kan. 499, 781 P.2d 1084 (1989), the Court of Appeals concluded that the tortfeasor causing State Farm Mutual to be liable for underinsured motorist coverage was Gordon, not West. The parties agreed that Gordon was 90% at fault in the accident. Therefore, the settlement with West did not interfere with the rights of State Farm Mutual to obtain subrogation from the party responsible for the damages State Farm Mutual paid. The Court of Appeals pointed out that the district court determined that the total damages suffered by Harding was $200,000, with fault apportioned at 90% to Gordon and 10% to West. This determination was accepted by the district court. Because the $20,000 paid by Farmers on behalf of West represents his total liability, State Farm Mutual would not be entitled to additional recovery from West and, therefore, was not prejudiced by the settlement.

Finally, the Court of Appeals considered whether the district court erred in denying attorney fees, which were requested by Harding before the district court and now on appeal. The Court of Appeals correctly pointed out that the district court erred in concluding that attorney fees are not appropriate in an underinsured motorist case. No statute prohibits the awarding of attorney fees in underinsured motorist insurance cases, and therefore attorney fees are available under K.S.A. 40-256 in an appropriate case.

The Court of Appeals found, however, that State Farm Mutual's denial of payment was not "without just cause or excuse," and therefore the district court did not err in failing to grant attorney fees. Even though the district court relied upon the wrong ground or assigned an erroneous reason for its decision, the Court of Appeals concluded that the judgment of the district court was

correct and should be upheld. The Court of Appeals also concluded that a good faith controversy existed about State Farm Mutual's liability on the appeal and denied Harding's request for attorney fees during the appeal.

We first consider whether the money that was paid by a tortfeasor's insurer under a workers compensation lien should be deducted from the insured's underinsured motorist coverage policy limits. Under the policy in question here, State Farm Mutual promises to pay damages "for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.*" As defined by the State Farm Mutual policy, Gordon is an underinsured motorist and the uninsured motor vehicle coverage applies in this case. This was the finding reached by the district court and the Court of Appeals and is not contested in this appeal.

Where the motor vehicle is underinsured, the State Farm Mutual policy provides that, subject to the maximum total amount payable to all insureds, the most State Farm Mutual will pay to any one insured is the lesser of:

> "(1) the difference between the 'each person' limit of liability of this coverage and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or
>
> "(2) the difference between the amount of the *insured's* damages for *bodily injury* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury.*"

The next provision of the policy provides that any amount payable under this coverage "shall be reduced by any amount paid or payable for the same damages to or for the *insured* . . . under any worker's compensation law."

Harding argues that the State Farm Mutual policy could have provided that its liability limitation would apply to any amount recovered from a tortfeasor; instead, subsection 2(b) of the limits of liability states that the amount of coverage would be reduced by an amount paid under workers compensation law applied to "the same damages to or for the *insured.*" Harding argues that the term "paid to the insured" requires Harding to actually receive money, which admittedly did not occur because the sub-

rogation lien of State Farm Casualty required that the amounts be paid directly to it. We do not agree.

It is undisputed that State Farm Casualty claimed the money under its workers compensation subrogation lien because of workers compensation benefits paid to Harding. The Court of Appeals recognized that the extent and nature of subrogation rights of an employer under the Workers Compensation Act are matters for legislative determination. (Quoting *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, 469, 625 P.2d 472 [1981].) The statute in question, K.S.A. 1990 Supp. 44-504(a), provides that an injured worker who has received workers compensation benefits under circumstances creating a legal liability against a person other than the employer or any person in the same employ has the right to "take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person." K.S.A. 1990 Supp. 44-504 further provides:

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid."

In reviewing this statute, the Court of Appeals notes that it repeatedly refers to the phrase "such recovery," meaning the tort recovery available to the injured worker. By construing this statute to give the words their natural and ordinary meaning in common usage, the Court of Appeals concludes that subsection (b) specifies that no right of subrogation arises until a worker recovers from a tortfeasor. Thus, the court reasons that Harding had to recover the money from tortfeasors Gordon and West

before State Farm Casualty's subrogation right could attach and be enforced against the funds. The Court of Appeals states:

"Since Harding acknowledges State Farm Casualty had a valid subrogation claim to the $80,000 paid on his behalf, he necessarily must acknowledge that he recovered the $80,000 from the tortfeasors. If we were to accept Harding's position that he was never 'paid' the $80,000, it would be the same as saying Harding never recovered $80,000 and the tortfeasors' insurance companies paid a total of $80,000 to State Farm Casualty gratuitously."

The Court of Appeals states that Harding's counsel clearly considered the settlement a two-step procedure, with Harding collecting the recovery and using this to satisfy the subrogation claim. Subrogation contemplates one person's stepping into the shoes of another, and here, State Farm Casualty stepped into Harding's shoes to accept payment from the tortfeasors. State Farm Casualty took over the debt that was owed to Harding which, in turn, erased Harding's debt to State Farm Casualty.

In addition, the policy limits the liability for bodily injury by reducing an amount payable under the coverage for uninsured motor vehicles by an amount paid or payable for the same damages "to or for the insured." This language indicates the coverage is to be reduced whether the amount is paid directly to the insured or payable on behalf of the insured to a third party. The same language is used throughout the section limiting liability under the uninsured motor vehicle coverage section. Further, it was Harding who negotiated and accepted the settlements with State Farm Casualty and the offer of judgment with Gordon and West that required the $60,000 interpled to be paid to State Farm Casualty.

The Court of Appeals also rejected the district court's conclusion that the workers compensation payments were for different damages. Instead of considering the total amount of damages suffered by Harding, which would be subject to compensation by both workers compensation and underinsured motorist coverage, the Court of Appeals viewed the events as involving one accident and applied the recovery under workers compensation directly against the underinsured motorist coverage. The Court of Appeals noted that Harding involved three groups in his effort to collect these damages: his employer for workers compensation

damages; the tortfeasors for damages; and his own insurance company for additional damages. It saw no logical reason to conclude that the benefits were not for the same damages, and found that the $80,000 paid to Harding was for the same damages as those he was entitled to receive under the underinsured motorist coverage. We agree with the Court of Appeals as to the $60,000 interpled by Gordon and conclude that amount should be set off directly against the underinsured motorist coverage available to Harding as the insured.

We next determine if the limitation of coverage provision, which reduces underinsured motorist coverage by all sums paid by any person who is or may be legally liable for bodily injury, is enforceable as to the $20,000 paid by West's insurer. The parties agree that Gordon was the tortfeasor who caused this automobile accident. His vehicle collided with West's vehicle which, in turn, collided with Harding's. West had $50,000 liability coverage, but Harding's damages attributable to West were $20,000. West paid Harding $20,000 and thus fully compensated Harding for any damages for which West was liable.

The problem created by the Court of Appeals' decision is well illustrated by the facts of this case. Harding obtained a judgment against Gordon for $180,000. Harding received approximately $60,000 in damages from Gordon, resulting in an outstanding judgment of approximately $120,000. This uncompensated judgment against Gordon, who was an underinsured motorist, qualifies Harding for benefits under 40-284(b) regardless of the $20,000 payment from West. Harding hypothesizes an even more dramatic situation by slightly modifying the facts. If recovery from a fully insured tortfeasor, such as West, had been $40,000 or more, and if Harding continued to receive $60,000 from Gordon, then Harding would not be allowed to recover any underinsured motorist benefits even though his uncompensated judgment against the underinsured motorist Gordon of $120,000 qualified him for benefits under 40-284(b).

Harding asserts that this court's recent decision in *Stewart v. Capps*, 247 Kan. 549, 802 P.2d 1226 (1990), addresses this issue. Capps' insurance policy had limits of $25,000 per person with a limit of $50,000 per accident under the bodily injury coverage, and similar limits of $25,000 per person with $50,000 per accident

policy limits for the uninsured motorist coverage. The insurance company sought to set off the payment of $25,000 for Capps' liability against the amount of compensation due for the negligence of the uninsured motorist under the provisions of the policy that stated: "Any payment under this [uninsured motorist] coverage to or for a covered person will reduce any amount that person is entitled to recover under the Liability Coverage of this policy." The language in the liability and uninsured motorist coverage sections of the contract were similar. Reversing the trial court, the Court of Appeals found the setoff provision in the liability and uninsured motorist sections of the policy void and unenforceable, in violation of 40-284(e), and against public policy. In *Stewart,* this court stated:

"The statutory provisions of K.S.A. 40-284(e), which govern the terms of the automobile policy, are incorporated into the coverage and preempt any terms or clause of a policy that have a contrary meaning. See *Simpson v. Farmers Ins. Co.,* 225 Kan. 508, 511, 592 P.2d 445 (1979). K.S.A. 40-284 is to be liberally construed to carry out its remedial objectives to provide financial protection to the named insured for injuries caused by a negligent uninsured motorist. Any term of an insurance policy that limits the statutorily required uninsured motorist coverage must be strictly construed." 247 Kan. at 555.

In *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976), this court struck down a provision of an insurance policy that attempted to reduce uninsured motorist coverage by the amount of the recovery of any workers compensation benefits, finding that it was an unauthorized attempt to limit or dilute the statutorily mandated coverage. After this decision, the legislature amended 40-284(e) to allow reduction of uninsured motorist coverage by workers compensation benefits. Following the rationale in *Van Hoozer,* this court in *Stewart* concluded that a setoff provision must be an exclusion under 40-284(e) to be valid and enforceable. 247 Kan. at 555. Because the setoff provision contained in the policy was not an enumerated limitation of 40-284(e), it was unenforceable. This court stated:

"Where uninsured motorist coverage in an automobile liability policy is purchased pursuant to K.S.A. 40-284, an injured covered passenger has available the total of the liability and uninsured motorist coverage limits in the event of an accident involving his or her negligent driver and a negligent uninsured driver. The injured covered passenger may recover proven dam-

ages up to the combined limits of the liability and uninsured motorist coverages." 247 Kan. at 556.

Uninsured motorist coverage was developed to protect non-negligent motorists where the tortfeasor is uninsured. *Van Hoozer*, 219 Kan. at 600. Typically, the policy provides rights against a motorist's insurance company equal to those against an uninsured tortfeasor. 219 Kan. at 600. Permissible exclusions and limitations are listed in K.S.A. 1990 Supp. 40-284(e). Attempts by insurance policy provisions to otherwise condition, limit, or dilute the unqualified uninsured motorist coverage mandated by statute are void and of no effect. *Van Hoozer*, 219 Kan. at 607; *Clayton v. Allied Mutual Cas. Co.*, 212 Kan. 640, 647, 512 P.2d 507, *reh. denied* 213 Kan. 84, 515 P.2d 1115 (1973).

Harding argues that neither the statutory definition of under-insured motorist contained in 40-284(b) nor the limitations or exclusions listed in 40-284(e) permit the provision in State Farm Mutual's policy that reduces the amount payable to an insured by "the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury.*"

This court described the purpose of mandating the availability of uninsured motorist coverage in *Winner v. Ratzlaff*, 211 Kan. 59, 63-64, 505 P.2d 606 (1973), as follows:

"The purpose of legislation mandating the offer of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation and this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages [citation omitted]. As remedial legislation it should be liberally construed to provide the intended protection."

In support of his argument, Harding asserts that K.S.A. 1990 Supp. 60-258a makes each tortfeasor responsible for his share of damages based on a proportion of fault. Because joint and several liability no longer applies to negligence in Kansas, defendants cannot seek contribution or indemnification from other tortfeasors. Because each tortfeasor is liable for those total damages caused by his percentage of comparative fault, the liability for damages owed by one tortfeasor does not affect payment by another. Be-

cause the tortfeasor's obligations are separate, Harding argues that the application and reduction of underinsured motorist benefits should also be applied separately.

In its opinion, the Court of Appeals ruled that the Harding settlement with West's insurance carrier did not violate State Farm Mutual's policy that prohibited settlement, noting that Gordon was the tortfeasor causing State Farm Mutual to be liable for underinsured motorist coverage. The subrogation provision of 40-284 gave State Farm Mutual the right to recoup payments made on underinsured motorist coverage from parties responsible for the damages State Farm Mutual paid, which was Gordon. Harding argues that, although the Court of Appeals recognized and applied the concept correctly in concluding that settlement with West did not forfeit Harding's right to recover underinsured motorist coverage, it failed to use that concept when it reduced underinsured motorist benefits by the amount of West's settlement. According to Harding, only payments by Gordon's liability carrier qualified to reduce underinsured motorist benefits. Harding's underinsured motorist coverage limit is equal to his liability limit of $100,000. K.S.A. 1990 Supp. 40-284(b). The only permissible exclusion or limitation to this coverage is an exclusion listed in 40-284(e) or a reduction by "the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." K.S.A. 1990 Supp. 40-284(b). None of those limitations applies to payments made by another fully insured tortfeasor.

State Farm Mutual argues that this case is both factually and legally dissimilar to *Stewart* because the reduction attempted in *Stewart* involved payment of sums under two provisions, liability coverage and uninsured motorist coverage, of the same policy. In contrast, this case involves an insured's attempt to collect underinsured motorist benefits from his carrier after collecting sums from two underinsured drivers of other automobiles. State Farm Mutual asserts that its policy here is not "limiting" but is actually less restrictive than it could be under the statute. K.S.A. 1990 Supp. 40-284(b) requires underinsured motorist coverage "to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." Gordon had a limit of $60,000; West had a

$50,000 limit; Harding had a limit of $100,000. State Farm Mutual asserts that because Gordon's and West's combined underinsured motorist limits were $110,000, Harding's limit of $100,000 did not "exceed" the limits of coverage available to him from the other drivers' policies and the State Farm Mutual policy was not required to provide coverage. The problem with this argument is that the language of 40-284(b) does not indicate that the policies of the other drivers should be combined to determine the amount of liability. Instead, both 40-284(b) and the policy use the singular "owner or operator" when referring to the driver of the other automobile. This suggests that the individual policies should be compared separately with the underinsured motorist coverage.

The comparative fault statute abolished joint and several liability. K.S.A. 1990 Supp. 60-258a. Each tortfeasor is responsible only for his percentage of comparative fault and not for the comparative fault of other joint tortfeasors who are not his agent. *Teepak, Inc. v. Learned*, 237 Kan. 320, 325-26, 699 P.2d 35 (1985).

The right to collect uninsured motorist benefits is based on the fault of the uninsured motorist without regard to negligence and liability of others. K.S.A. 1990 Supp. 40-284(a) specifically requires automobile insurance liability policies to provide coverage equal to liability coverage that the insured "shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle . . . sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicles, or providing for such payment irrespective of legal liability of the insured or any other person or organization." The question of joint and several setoff was not an issue raised below because the district court concluded all monies paid by the two tortfeasors' liability carriers were paid to State Farm Casualty and not set off against underinsured coverage. The judgment of $180,000 against Gordon, the underinsured motorist, was not altered by payment of $20,000 for separate damages caused by West, a fully insured tortfeasor.

In contrast the Court of Appeals, following the language of the policy, in effect, applied joint and several liability rules to reduce the $100,000 underinsured motorist coverage by payments by "any *person* or organization who is or may be held legally liable

for the *bodily injury.*" The Court of Appeals, interpreting the policy, stated that "[t]he clear meaning of the policy language is that the insured is entitled to underinsured motorist benefits of $100,000 less any money *paid to* the insured by any person legally liable for the bodily injury the insured sustained in the accident." The Court of Appeals then reduced the amount of liability available to each person, $100,000, by the amount paid by any person (here, Gordon and West), $80,000, to conclude that the net benefits due were $20,000.

Pursuant to K.S.A. 1990 Supp. 40-284(b), the State Farm Mutual policy was required as a minimum coverage to provide the amount of damages for bodily injury or death that Harding was legally entitled to receive from Gordon ($180,000) to the extent that State Farm coverage ($100,000) exceeds the limits of the bodily injury coverage carried by Gordon ($60,000). This statute requires State Farm Mutual to provide underinsured motorist coverage of no less than the difference between Harding's policy limits of $100,000 and Gordon's policy limits of $60,000. Here, the difference is $40,000. The provision of State Farm Mutual's policy that requires reduction of monies paid by the other fully insured tortfeasor, West, violates the mandatory minimum underinsured motorist coverage that must be included in the policy.

*Stewart v. Capps* is not directly on point; however, the central issue here is the ability of insurance policy provisions to condition, limit, or dilute the unqualified underinsured motorist coverage mandated by 40-284. This court has repeatedly held that insurance policy provisions that are not authorized by statute but which purport to condition, limit, or dilute the broad, unqualified underinsured motorist coverage mandated by K.S.A. 1990 Supp. 40-284 are void and unenforceable. The setoff provision here attempts to limit the underinsured motorist coverage mandated by 40-284 by deducting the amount received from other persons or organizations who may be legally liable for the bodily injury regardless of whether they trigger the underinsured motorist coverage at issue in this case. Such a setoff provision is not listed within the exclusions or limitations of coverage found at 40-284(e). Therefore, this limitation is void and unenforceable. The Court of Appeals' decision on this issue is reversed.

Harding next argues that the Court of Appeals improperly deducted the amount of itemized damages attributable to property damage, towing, and storing from the underinsured motorist coverage. Harding asserts that the policy limitation does not reduce underinsured motorist coverage by Harding's itemized judgment for property damage, $1,200, and towing and storage, $83.45, because those damages do not involve bodily injury.

State Farm Mutual responds that the record contains no evidence or finding that Harding was reimbursed by the workers compensation carrier for $1,283.45 for property damage, towing, and storage. It further notes that the amount of interpled funds paid to the workers compensation carrier was $62,267.81 and not $60,000.

State Farm Mutual is correct in its assertion that the record does not establish that this reimbursement was made. Harding is arguing that, if the Court of Appeals' decision stands, then State Farm Mutual should not receive full credit for the $80,000 (actually $82,267.81) received from both tortfeasors; instead, this amount should be reduced by $1,283.45 that was received for property damage and not for personal injury. Because the record does not establish that part of the recovery by the workers compensation carrier went to reimburse Harding for property damage, we cannot say that this reduction should be made.

The final issue is whether attorney fees should have been awarded. K.S.A. 40-256 provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201 . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs."

The statute contains a proviso that does not allow costs if the insurance company makes a tender before commencement of the action, and the amount recovered does not exceed that tender. K.S.A. 40-256.

In its decision, the Court of Appeals noted that no case law excepts the awarding of attorney fees in underinsured motorist insurance cases. Therefore, the district court erred in ruling that

K.S.A. 40-256 did not apply to underinsured motorist cases. Attorney fees can be awarded in underinsured motorist cases pursuant to K.S.A. 40-256 if the facts and circumstances warrant.

However, the Court of Appeals concluded that no attorney fees should have been awarded, and therefore the district court's ruling was correct even though made for the wrong reason. The Court of Appeals' decision was based upon its conclusion that State Farm Mutual's denial of payment was not "without just cause or excuse" as needed to justify an award of attorney fees under K.S.A. 40-256.

Whether an insurance company has refused to pay a claim without just cause depends upon the facts and circumstances of a particular case. If a good faith legal controversy exists as to liability, attorney fees must be denied. Further, if a bona fide and reasonable factual ground for refusing to pay a claim exists, attorney fees are not awardable. *Harper v. Prudential Ins. Co. of America*, 233 Kan. 358, 372, 662 P.2d 1264 (1983); *Clark Equip. Co. v. Hartford Accident & Indemnity Co.*, 227 Kan. 489, 493-94, 608 P.2d 903 (1980). Denial of payment that is not arbitrary, capricious, or in bad faith will not give rise to an award of attorney fees. *Clark Equip. Co.*, 227 Kan. at 494.

Because State Farm Mutual had a legitimate argument to present to the court, its refusal to provide coverage was not without just cause or excuse. Therefore, the Court of Appeals correctly upheld the judgment of the district court, even though the district court relied upon an improper ground or assigned an erroneous reason for its decision. *Sutter Bros. Constr. Co. v. City of Leavenworth*, 238 Kan. 85, 93, 708 P.2d 190 (1985).

The judgments of the Court of Appeals and the district court are affirmed in part and reversed in part, and the case is remanded to the district court to enter judgment for Harding against State Farm Mutual for $40,000, with interest from the date and at the rate previously determined by the district court.

ABBOTT, J., not participating.