No. 68,205

WAYNE KILNER, *Appellant,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellee.*

(847 P.2d 1292)

Opinion filed March 5, 1993.

*Jerry R. Palmer,* of Palmer & Lowry, of Topeka, argued the cause and was on the briefs for appellant.

*Craig C. Blumreich,* of Gehrt & Roberts, Chartered, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff Wayne Kilner, who was injured by an underinsured motorist, appeals the district court's grant of summary judgment to his insurer, State Farm Mutual Automobile Insurance Company (State Farm). The order allows plaintiff's insurer, pursuant to K.S.A. 1992 Supp. 40-284(e)(4), to offset against its underinsured motorist coverage liability nonduplicative workers compensation benefits paid by the plaintiff's employer's insurer.

The appeal is on an agreed statement pursuant to Supreme Court Rule 3.05 (1992 Kan. Ct. R. Annot. 17). Facts set out in the statement are summarized.

Wayne Kilner was injured in an automobile accident when the vehicle he was driving was struck by a pickup truck being driven by Robert Owen, Jr. At the time of this accident, Kilner was driving a pickup truck owned by his employer, Dick Edwards Ford, and was acting in the scope of his employment. The employer's pickup was insured through Federated Mutual Insurance Company (Federated) with a $50,000 single limit for liability of uninsured/underinsured motorist coverage. Kilner insured his personal vehicles with State Farm. His uninsured/underinsured motorist coverage limits with State Farm were $100,000 per person and $300,000 per occurrence. Owen's pickup was insured by Dairyland Insurance Company (Dairyland) with a $25,000 liability limit.

Kilner filed a workers compensation claim against Dick Edwards Ford and its workers compensation insurance carrier, Federated. As of December 4, 1990, Kilner had received workers compensation benefits of $89,872.45. Of this amount, $62,224.45 was paid for medical expenses. Kilner has continued to receive payments for permanent partial disability at the rate of $256 per week. State Farm has paid personal injury protection (PIP) benefits to the plaintiff in the amount of $14,721 for lost wages and interest on lost wages.

Due to the multiple claimants in the accident, Dairyland filed an interpleader action requesting that its liability limits of $25,000/

$50,000 be equitably distributed by the court among the claimants. The district court apportioned the sum of $25,000 to Kilner from the Dairyland policy. The $25,000 was paid to Federated, Kilner's subrogated workers compensation carrier.

The parties agree that Wayne Kilner's claim for damages against Robert Owen, Jr. exceeds by more than $75,000 the aggregate of PIP benefits paid and workers compensation benefits paid and payable. The parties also agree that Robert Owen, Jr. was 100% at fault in causing the accident and that the plaintiff would be entitled to recover $75,000 underinsured motorist coverage from State Farm if duplicative workers compensation benefits are excluded.

Prior to the district court's decision, two pertinent cases were filed. On August 2, 1991, United States District Judge Patrick F. Kelly issued a memorandum and order in the case of *Bockwinkel v. American Economy Insurance Company*, 1991 WL 171968 (D. Kan.), determining that uninsured or underinsured motorist coverage was not an issue in that case. On January 17, 1992, this court issued its decision in *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. 209, 824 P.2d 955 (1992), construing 40-284(e)(6) with regard to permissible offsets for PIP benefits paid from an automobile insurer's underinsured motorist coverage.

The district court granted State Farm's motion for summary judgment, finding *Rich* inapplicable to the interpretation of 40-284(e)(4) because the insured paid a separate premium for PIP benefits coverage but did not pay a premium for workers compensation benefits coverage. The district judge adopted the analysis of Judge Kelly in *Bockwinkel*, and determined that the absence of the word "duplicative" in 40-284(e)(4) allows an offset for workers compensation benefits received by the insured. Because the district court granted the defendant's motion for summary judgment, it also denied plaintiff's request for prejudgment interest and attorney fees.

In 1968, the Kansas Legislature enacted the uninsured motorist statute, K.S.A. 1968 Supp. 40-284. This statute allowed motorists who incurred damages in an automobile accident with an individual who had no automobile insurance to recover benefits for those damages from their own insurance company, up to the limits of their coverage. In 1981, the legislature amended the law to

include within the uninsured motorist statute provisions for coverage for underinsured motorists. Section (b) of this statute now provides:

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

The insurer charges a premium for uninsured motorist coverage and a separate premium for underinsured motorist coverage. *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. at 212.

K.S.A. 1992 Supp. 40-284(e) allows an insurer to exclude or limit its uninsured and underinsured motorist coverage. It provides in part:

"(e) Any insurer may provide for the exclusion or limitation of [underinsured motorist] coverage:

. . . .

"(4) to the extent that workers' compensation benefits apply;

. . . .

"(6) to the extent that personal injury protection benefits apply."

The question is, does 40-284(e)(4) allow the offset of underinsured motorist benefits for every dollar of workers compensation benefits received, or just where underinsured motorist benefits duplicate the workers compensation benefits?

## DOES *BOCKWINKEL* APPLY?

Plaintiff Joseph Bockwinkel was involved in a multi-vehicle accident on I-70 while driving a pickup truck owned by his employer, Great Western Tire of Oakley, Inc. At the time of the accident, two insurance policies issued by the American Economy Insurance Company and Northwestern National Casualty Company provided coverage to the employer's pickup truck.

A severe dust storm caused drivers on I-70 to slow. Defendant, Franklin J. Clayton, slowed to a halt in the righthand lane. While stopped, Clayton's car was struck by a semi-tractor truck. After this collision, Clayton's car was damaged, but he was able to push it onto the shoulder.

The dust had caused several vehicles, including Bockwinkel's pickup truck, to halt behind Clayton's car. Bockwinkel's pickup truck was struck from behind by a semi-tractor truck owned by Gray Rock Farms. The pickup was thrown into the lefthand lane by the force of the impact, and then struck by a vehicle driven by defendant Burke Kitchen. Bockwinkel filed a tort action against all parties and his employer's insurers.

Bockwinkel claimed that because he was unable to identify the driver of the semi-truck that struck the Clayton's car, he was entitled to uninsured motorist coverage under his employer's policies. One of the employer's insurers argued (1) that no uninsured motorist coverage was available because Bockwinkel had already received workers compensation in excess of the potential uninsured motorist coverage; and (2) that uninsured motorist coverage was not an issue because the plaintiff had failed to prove that the uninsured motorist caused the plaintiff's injury. The United States District Court, after noting both the policies of American and National contained provisions reducing coverage for amounts received in the form of workers compensation benefits, discussed 40-284(e) and Kansas cases which discussed workers compensation benefits and setoffs allowed an employer's insurer. The federal district court determined that the plaintiff failed to meet his burden of proof that an uninsured motorist caused or contributed to his injuries and stated, "[E]ven assuming the truck which struck the Clayton vehicle was either genuinely unidentifiable or uninsured, the matter is not controlling since the truck played no causal role in the subsequent accident involving Bockwinkel." The federal district court determined that Bockwinkel's additional argument, that there was potential underinsured motorist coverage, was purely a hypothetical matter involving a claim which was premature.

In granting summary judgment in this case, the district court's reliance on *Bockwinkel* and *Allied Mut. Ins. Co. v. Gordon,* 248 Kan. 715, 811 P.2d 1121 (1991), is misplaced. The federal district court in *Bockwinkel* merely discussed the provisions of the employer's insurers' policies, certain Kansas cases including *Gordon,* and 40-284(e)(4), but did not determine whether the uninsured/ underinsured motorist benefits were duplicative of workers compensation benefits.

### RICH v. FARM BUREAU

In *Rich,* Lavin was a passenger injured in a one-vehicle accident. Both the driver and the owner of the vehicle paid the liability limits of their policies in settlement with Lavin. Lavin's underinsured motorist coverage exceeded the combined $75,000 liability coverages of the owner and driver of the vehicle ($50,000 + $25,000) by $25,000. The parties agreed that the maximum liability coverage and PIP benefits plaintiff was entitled to receive was $177,000. Lavin made claim for underinsured motorist benefits against his own automobile liability insurance carrier, KFB Insurance Company, Inc. (KFB).

KFB denied the estate's claim for $25,000 on grounds the $40,667.52 in PIP benefits it paid Lavin exceeded his $25,000 claim for underinsured motorist benefits; therefore, pursuant to 40-284(e)(6), the $25,000 claim should be offset against the PIP benefits already paid. The parties stipulated that a court or jury would find Lavin's actual damages exceeded $177,000. The parties also stipulated that none of the damages plaintiff claimed under the underinsured motorist coverage were damages to which PIP benefits "apply." The issue in *Rich* was whether Lavin's estate was entitled to the $25,000 of underinsured motorist benefits or whether the insurer was entitled to offset the $25,000 of underinsured motorist coverage against the nonduplicative PIP benefits it had paid.

In *Rich,* the district court ruled that 40-284(e)(6) allowed the insurer to reduce the underinsured coverage by payments it already made for personal injury protection. The trial court held the $25,000 of underinsured motorist coverage could be set off against the PIP payments and, thus, the insurer had no further liability to its insured. Lavin's estate appealed, claiming 40-284(e)(6) allowed setoff of the underinsured benefits only if the benefits were duplicative of the PIP benefits the insurer previously paid.

The *Rich* court noted that the purpose of legislation mandating the offer of uninsured and underinsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. This coverage is intended to provide recompense to innocent persons damaged through the

wrongful conduct of motorists who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages. 250 Kan. at 215. See *Winner v. Ratzlaff*, 211 Kan. 59, Syl. ¶ 1, 505 P.2d 606 (1973).

The court observed that the uninsured and underinsured motorist statutes are remedial in nature. The statutes should be liberally construed to provide broad protection to the insured against all damages, caused by the acts of an uninsured or underinsured motorist, resulting from bodily injuries sustained by the insured that are caused by an automobile accident and arose out of the ownership, maintenance, or use of the insured motor vehicle. 250 Kan. at 215. See *Simpson v. Farmers Ins. Co.*, 225 Kan. 508, 512, 592 P.2d 445 (1979).

The *Rich* court found the purpose of 40-284 is to provide the individual who is covered by the standard automobile liability policy with a right against his or her own insurer equal to that the insured would have against the uninsured or underinsured tortfeasor. 250 Kan. at 215-16. *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 600, 549 P.2d 1354 (1976). The *Rich* court held that the legislature intended 40-284(e)(6) to permit an insured to recover underinsured motorist benefits which are not duplicative of PIP benefits. It stated that any other result negates the legislature's intent to require underinsured motorist coverage protection. 250 Kan. at 216.

State Farm asserts that *Rich*'s rationale of 40-284(e)(6) does not apply to 40-284(e)(4) because PIP benefits and workers compensation benefits are fundamentally different. It claims for this court to treat (e)(4) and (e)(6) the same would allow an insured, injured in an automobile accident while acting within the scope of employment, to receive a greater recovery from the underinsured motorist coverage than the insured would have received had the tortfeasor's liability insurance limits been equal to the injured insured's underinsured motorist insurance limits. For example, if Kilner had received $100,000 from the tortfeasor's liability insurer and $100,000 in workers compensation benefits, Kilner would be required to pay the $100,000 recovery from the tortfeasor's liability insurance to the workers compensation carrier under K.S.A. 1992 Supp. 40-3113a and would receive zero net proceeds from the tortfeasor's liability insurance. Under this scenario Kilner's

total benefits would be the $100,000 workers compensation benefits. State Farm asserts if we adopt Kilner's reasoning, Kilner's total benefits would be $100,000 in workers compensation benefits plus $75,000 underinsured motorist benefits. According to State Farm, this result is inconsistent with the purpose of 40-284 to provide the individual who is covered by the standard automobile liability policy with a right against his or her own insurer equal to that which the insured would have against the uninsured or underinsured tortfeasor.

State Farm notes the fundamental rule of statutory construction is that the intent of the legislature governs and, when construing a statute, a court should give words in common usage their natural and ordinary meaning. *State ex rel. Secretary of SRS v. Clear,* 248 Kan. 109, Syl. ¶ 2, 804 P.2d 961 (1991); *Spor v. Presta Oil Co.,* 14 Kan. App. 2d 696, 798 P.2d 68 (1990). Where a statute is clear and unambiguous, the court must give effect to the expressed legislative intent without regard to what the court thinks the law should or should not be. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.,* 14 Kan. App. 2d 714, Syl. ¶ 6, 798 P.2d 511 (1990). Legislative intent must be derived from the language of the statute and where the language used is plain and unambiguous the court must follow the intent as expressed by the words used. *State v. V.F.W. Post No. 3722,* 215 Kan. 693, 695, 527 P.2d 1020 (1974); *City of Overland Park. v. Nikias,* 209 Kan. 643, 646, 498 P.2d 56 (1972). Where a statute is clear and unambiguous, it must be applied accordingly without judicial construction. *Batt v. Globe Engineering Co., Inc.,* 13 Kan. App. 2d 500, 503, 774 P.2d 371, *rev. denied* 245 Kan. 782 (1989).

State Farm asserts that these rules of statutory construction support its position that underinsured motorist benefits may be offset against all workers compensation payments whether or not the underinsured motorist benefits are duplicative of the workers compensation payments. It contends that because of the absence of the word "duplicative" in 40-284(e)(4), the standard rules of statutory construction prevent this court from inserting duplicativeness into that statute. It argues that while in *Rich* there was a compelling reason to maintain consistency between PIP subrogation and PIP setoff, there is no reason to do so for workers compensation.

For support of its argument, State Farm refers to the statutory right of an employer to be subrogated for compensation paid an injured employee. State Farm points out that K.S.A. 1992 Supp. 40-3113a allows an employer to be subrogated only to the extent that duplicative PIP benefits are recovered by the injured worker while the workers compensation subrogation statute, K.S.A. 1992 Supp. 44-504(b), allows the employer to be subrogated by a negligent third party to the extent of compensation and medical aid provided by the employer to the date of recovery, regardless of duplicativeness. Without citing any authority, State Farm concludes that the offset provisions of 40-284(e)(4) were legislatively enacted to allow reduction of workers compensation benefits in uninsured and underinsured motorist coverage similar to the reductions allowed an employer's insurer in 44-504(b).

State Farm also notes that K.S.A. 40-287, which allows an underinsured motorist insurer to be subrogated to the proceeds of any tort settlement or judgment on behalf of its insured, does not contain the word "duplicative." It notes that in *State Farm Mut. Auto. Ins. Co. v. Kroeker,* 234 Kan. 636, 647, 676 P.2d 66 (1984), this court, referring to K.S.A. 40-287, stated: "The insurance carrier is entitled to be subrogated, to the extent of uninsured motorist payments paid, to the proceeds of any settlement or judgment obtained by the insured without restriction. Certainly the legislature must have intended a different result by using the word 'duplicative' in K.S.A. 40-3113a." State Farm concludes the absence of the word "duplicative" in 40-284(e)(4) requires that workers compensation benefits received by its insured be offset under its underinsured coverage whether duplicative or not.

For support, State Farm cites two cases interpreting other states' statutory right of an insurer to offset underinsured motorist claims by its insured. The first case is *Rudd v. California Casualty Gen. Ins. Co.,* 219 Cal. App. 3d 948, 268 Cal. Rptr. 624 (1990). In *Rudd,* the California court determined under the statutes that an automobile insurer was entitled to a setoff against the amount it owed under its underinsured motorist policy provisions by the amount of workers compensation benefits received by the insured. The court noted the fundamental purpose of the statute is to provide the insured with the same insurance protection he or

she would have had if the adverse driver had been properly insured, and not to place the insured in a better position than he or she would have occupied had the other driver carried such insurance. The court reasoned that because the statute embraced both types of coverage under the denomination "uninsured motorist coverage," "the plain language of the statute specifying a workers compensation setoff against the 'uninsured motorist coverage' must be construed as permitting such setoff to be applied against either type of coverage provided under the rubric of 'uninsured motorist coverage.' " 219 Cal. App. 3d at 954.

The second case cited by State Farm, although State Farm admits it is not directly on point, is *Sulser v. Country Mutual Ins. Co.*, 147 Ill. 2d 548, 591 N.E.2d 427 (1992). There, the issue appears to be whether an underinsured motorist benefit claimant should be treated differently than an uninsured motorist benefit claimant. The Illinois court stated the statute was designed to offer insurance to "fill the gap" between the claim and the tortfeasor's insurance and not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy. 147 Ill. 2d at 556. To the contrary, plaintiff claims Kansas allows "full recovery."

State Farm asserts it is significant that PIP benefits are purchased by the insured through the payment of a separate premium, a distinction specifically noted in *Rich*. State Farm points out that workers compensation benefits are not purchased by the insured but are a collateral benefit to the insured through premiums paid by the insured's employer. It argues that this distinction between PIP benefits and workers compensation benefits mandates disparate interpretation of the dissimilar setoff provisions of 40-284(e)(4) and (e)(6).

We disagree. First, *Rich* actually noted that the insurer charges a premium for uninsured motorist coverage and a separate premium for underinsured motorist coverage. Second, Kilner's employer's insurer paid its workers compensation insurer premiums as a condition of Kilner's employment. And finally, Kilner paid State Farm a separate premium for his underinsured motorist coverage.

Kilner notes the uninsured/underinsured motorist statutes are remedial in nature and, as such, they should be liberally con-

strued to provide broad protection to the insured against all damages resulting from bodily injuries sustained by the insured when the accident is caused by an uninsured or underinsured motorist. Kilner claims the legislative intent of 40-284(e)(4) and 40-284(e)(6) is to permit an insured to recover from his insurer underinsured motorist benefits which are not duplicative. Kilner concludes that permitting him to recover nonduplicative underinsured motorist benefits furthers the statutory purpose of allowing an injured person to recover all losses.

Kilner points out that it is presumed that identical words used in different parts of the same statute are intended to have the same meaning throughout the act. *Berndt v. City of Ottawa,* 179 Kan. 749, 752, 298 P.2d 262 (1956). Further, when a court attempts to ascertain legislative intent in a statutory enactment, it is required to consider and construe all parts together in pari materia. *Guardian Title Co. v. Bell,* 248 Kan. 146, Syl. ¶ 8, 805 P.2d 33 (1991). The court may also consider the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have on the various constructions suggested. *Watkins v. Hartsock,* 245 Kan. 756, Syl. ¶ 1, 783 P.2d 1293 (1989).

Kilner claims that under the standard rules of statutory construction the offset of workers compensation benefits allowed by 40-284(e)(4) is limited to duplicative payments. He first points out that the language of the statute providing for the limitation or exclusion of uninsured motorist coverage is the same in both 40-284(e)(4) and (e)(6). He argues the construction of (e)(4) must be consistent with the interpretation of (e)(6) in *Rich.* He notes that to construe (e)(4) different from (e)(6) gives a completely different meaning to two statutory provisions whose language and purpose are identical. He concludes construing the two statutes differently is contrary to the rules of statutory construction and would make K.S.A. 1992 Supp. 40-284 internally inconsistent and inharmonious.

Kilner claims State Farm's argument requires the court to violate the rule of interpreting statutes "in pari materia" because it would result in duplicativeness being read into 40-284(e)(6) (PIP) but not into (e)(4) (workers compensation) where identical language is used. He argues this makes it impossible to interpret

the meaning of the same words within the same statute or within the same chapter of statutes, no matter how close together the words appear in the statute or same chapter.

It is the duty of a court when construing statutes to make the various provisions consistent, harmonious, and sensible. *Bell v. Simon,* 246 Kan. 473, 476, 790 P.2d 925 (1990); *State v. Adee,* 241 Kan. 825, 829, 740 P.2d 611 (1987). The construction of K.S.A. 1992 Supp. 40-284(e)(4) must be consistent with and harmonious with the construction of K.S.A. 1992 Supp. 40-284(e)(6). The failure to construe the two subsections of K.S.A. 1992 Supp. 40-284(e) consistently and harmoniously would be to give wholly different meanings to two statutory provisions whose language is identical.

K.S.A. 1992 Supp. 40-284(e)(4) allows an insurer to exclude or limit its uninsured and underinsured motorist coverage to the extent that duplicative workers compensation benefits apply. The legislature intended K.S.A. 1992 Supp. 40-284(e)(4) to permit an insured to recover underinsured motorist benefits which are not duplicative of workers compensation benefits. Any other result negates the legislature's intent to require underinsured motorist coverage protection.

### Prejudgment Interest

Because the district court determined Kilner was not entitled to any compensation under his underinsured motorist coverage, it did not determine whether prejudgment interest should be awarded. K.S.A. 16-201 provides:

"Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, *from the day of liquidating the account and ascertaining the balance."* (Emphasis added.)

Kilner asserts K.S.A. 16-201 requires prejudgment interest to be awarded if the amount owed is a liquidated sum. He argues his claim against State Farm is a liquidated sum and that prejudgment interest is required from the date the stipulation in this case was filed with the clerk of the district court.

A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the

same becomes definitely ascertainable by mathematical computation. *Johnson v. General Motors Corp.,* 233 Kan. 1044, 1053, 668 P.2d 139 (1983). See *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.,* 203 Kan. 591, 455 P.2d 555 (1969). Where an amount is due upon contract, either express or implied, and there is no uncertainty as to the amount which is due or the date on which it becomes due, the creditor is entitled to recover interest from the due date. *In re Tax Protests of Midland Industries, Inc.,* 237 Kan. 867, 868, 703 P.2d 840 (1985).

Kilner claims that the parties stipulated that the amount due him is $75,000, the amount due is a sum certain, and there is no dispute as to the amount.

Kilner's statement that the parties have stipulated that the "amount due" him is $75,000 is erroneous. The parties stipulated that Kilner's damages exceeded the amount of workers compensation benefits paid and payable and the amount of PIP benefits paid by at least $75,000 so the district court could determine a legal issue. Under these circumstances, K.S.A. 16-201 allowance of interest does not apply.

Attorney Fees

Kilner next contends he is entitled to attorney fees pursuant to K.S.A. 40-256. This question was never considered by the district court.

K.S.A. 40-256 provides in relevant part:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201, . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as part of the costs."

Kilner claims State Farm's refusal to pay the $75,000 underinsured motorist coverage benefit has been vexatious and unreasonable from the very beginning. He argues there was never any real dispute as to the liability of the underinsured motorist or the fact the motorist was underinsured. He argues that State Farm was aware that it was liable to him under the underinsured motorist provision of his policy and it refused to pay, necessitating the filing of the lawsuit. He contends State Farm's position on

K.S.A. 1992 Supp. 40-284(e)(4) and on the "same damages" language of its own policy was unreasonable. He further contends that once *Rich* was filed, State Farm should have paid him the $75,000 allegedly due in this case.

Most of Kilner's argument is conclusory. The few factual statements in his argument, *i.e.*, no dispute as to liability of the underinsured motorist, are irrelevant. The other statements and charges are unsupported by any citations to the record. K.S.A. 40-256 requires the *evidence* to show a refusal to pay without just cause or excuse. Kilner has failed to point out any evidence showing a refusal to pay without just cause or excuse. Kilner's position is without merit.

Reversed.