No. 66,319

FRANCES JEAN RICH, EXECUTOR OF THE ESTATE OF JOHN E. LAVIN, DECEASED, *Appellant*, v. FARM BUREAU MUTUAL INSURANCE COMPANY, INC., and KFB INSURANCE COMPANY, INC., *Appellees*.

(824 P.2d 955)

Opinion filed January 17, 1992.

*Jeffrey W. Jones*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Gary E. Laughlin*, of the same firm, was with him on the briefs for appellant.

*N. Larry Bork*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, argued the cause, and *Wayne T. Stratton*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an action for the recovery of underinsured motorist benefits. John E. Lavin was a passenger injured in a one-vehicle accident. Both the driver and the owner of the vehicle paid the liability limits of their policies in settlement with Lavin. Because Lavin's underinsured motorist coverage limits exceeded the combined coverage of the two tortfeasors, Lavin made claim for underinsured motorist benefits against his own automobile liability insurance carrier, KFB Insurance Company, Inc. (KFB). That claim was denied by KFB on grounds the PIP benefits Lavin had collected from KFB exceeded his claim for underinsured motorist benefits. Lavin died three weeks before the trial court decision in favor of KFB. Lavin's executor now appeals the trial court ruling that, pursuant to K.S.A. 40-284(e)(6), the insurer was entitled to set off the underinsured motorist benefits it owed against the nonduplicative PIP benefits it previously paid.

Lavin was a passenger in a car driven by Jimmy Roberts, which was involved in a single-car accident. The owner of the vehicle was insured by State Farm Insurance Company, with liability limits of $50,000. Roberts was insured by Farm & City Insurance Company through Mid-States Adjustment, Inc., with $25,000 liability limits. Each of those insurers paid the limits of its policy to plaintiff in settlement of its insured's liability to Lavin.

Lavin was insured under four policies of automobile liability insurance, two with Farm Bureau Mutual Insurance Company, Inc., and two with KFB. Farm Bureau Mutual Insurance Company is not involved in this appeal.

Lavin received $31,167.52 of PIP wage loss benefits and $9,500 PIP medical benefits through KFB policy #FA65134, which had the highest PIP coverage. Lavin's KFB policy #BC41159 had the highest underinsured motorist coverage with a limit of $100,000. Lavin's underinsured motorist coverage exceeded the combined $75,000 liability coverages of the owner and driver of the vehicle ($50,000 + $25,000) by $25,000. The parties agree that the max-

imum liability coverage and PIP benefits plaintiff is entitled to receive is $177,000.

KFB denied the estate's claim for $25,000 on grounds the $40,667.52 in PIP benefits it paid Lavin exceeded his $25,000 claim for underinsured motorist benefits; therefore, the $25,000 claim can be offset against the PIP benefits already paid. K.S.A. 40-284(e)(6).

Lavin's insurance benefits were calculated as follows:

| | |
|---|---|
| Liability | $100,000 |
| Lost Earnings | 63,000 ($1,750 × 36 months) |
| Medical | 9,500 |
| Rehabilitation | 4,500 |
| | $177,000 |

The parties stipulated that a court or jury would probably find Lavin's actual damages exceeded $177,000. The parties also stipulated that none of the damages plaintiff claims under the underinsured motorist coverage are damages to which PIP benefits "apply." Thus, the issue is whether Lavin's estate is entitled to the $25,000 of underinsured motorist benefits or whether KFB is entitled to offset the $25,000 of underinsured motorist coverage against the nonduplicative PIP benefits it paid.

The trial court, relying on a literal reading of K.S.A. 40-284(e)(6), ruled the statute allows the insurer to reduce the underinsurance coverage by payments it already made for personal injury protection. The trial court held the $25,000 of underinsurance coverage could be set off against the PIP payments and, thus, KFB had no further liability to its insured. Lavin's estate appealed, claiming K.S.A. 40-284(e)(6) allows setoff of the underinsured benefits only if the benefits are duplicative of the PIP benefits KFB previously paid.

In 1968, the Kansas Legislature enacted the uninsured motorist statute, K.S.A. 1968 Supp. 40-284. This statute allowed motorists who incurred damages in an automobile accident with an individual who had no automobile insurance to recover benefits for those damages from their own insurance company, up to the limits of their coverage. In 1981, the legislature amended the law to include within the uninsured motorist statute provisions for cov-

erage for underinsured motorists. This section of the statute, K.S.A. 40-284(b), provides:

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

The insurer charges a premium for uninsured motorist coverage and a separate premium for underinsured motorist coverage.

Other pertinent language of K.S.A. 40-284 allows an insurer to exclude or limit its uninsured and underinsured motorist coverage "to the extent that personal injury protection benefits apply." KFB's insurance policies incorporate the statute's language and state that coverage is not provided for bodily injury sustained by any person to the extent personal injury protection coverage applies.

PIP benefits apply to amounts for disability; funeral, medical, and rehabilitation expenses; substitution benefits; and survivor benefits. Intangible elements of damage, such as pain and suffering, disfigurement, and emotional distress are not covered by PIP benefits, but an injured person can recover such damages from the tortfeasor or, if the tortfeasor is underinsured, from the injured person's underinsured motorist insurance carrier. K.S.A. 40-3103(q).

Plaintiff contends the trial court erroneously construed the plain language of K.S.A. 40-284(e)(6) to allow KFB to offset the underinsured motorist coverage benefits against nonduplicative PIP benefits previously paid. Plaintiff further claims Lavin's estate is entitled to the $25,000 underinsured motorist benefits from the insurer because Lavin paid a separate premium for the coverage and the underinsured motorist benefits are not duplicative of the PIP benefits and, therefore, K.S.A. 40-284(e)(6) does not allow a setoff.

Plaintiff maintains that if the underinsured motorist coverage benefits claimed are for those intangible elements of damage not covered by PIP, i.e, damages to which PIP benefits do not

"apply," there is no double recovery. Plaintiff asserts if the legislature intended the limiting phrase "to the extent that [PIP] benefits apply" to mean "in an amount equal to the PIP benefits which the insured has received or is entitled to receive" the legislature could, should, and would have used a more specific phrase.

Plaintiff argues the trial court's construction of the statute leaves persons who purchase the highest level of PIP coverage, coupled with a medium to low level of liability coverage, no uninsured/underinsured motorist coverage in spite of having paid a premium for the coverage. In such a situation, the insured obtains no uninsured/underinsured motorist coverage because the insurer can set off its entire limit of uninsured/underinsured motorist coverage against PIP coverage. Here, for example, Lavin's potential PIP coverage was $77,000, but his underinsured motorist coverage after his recovery from the driver and the owner of the vehicle was only $25,000. Thus, the trial court's ruling allows KFB to disclaim all responsibility for underinsured motorist coverage despite the fact that Lavin paid an additional premium to KFB for that $100,000 of coverage.

Plaintiff contends it was not the intent of the legislature to enact remedial legislation requiring insurers to extend both PIP and uninsured/underinsured motorist coverage to Kansas drivers, for which those insurers collect additional premiums, and at the same time permit those same insurers to deny nonduplicative coverage of their injured insureds.

KFB asserts the legislative history of the statute does not reflect an intention of the legislature to limit the effect of the statute to duplicative benefits and that recent attempts to amend the statute to include the word "duplicative" indicate that the current version of the statute allows exclusion of both nonduplicative and duplicative PIP benefits. KFB argues there is no ambiguity in the statute, which plainly states that both duplicative and nonduplicative PIP benefits the insurer has previously paid to its insured may be excluded from the underinsured motorist coverage. KFB's argument that legislative history reflects an intention to allow exclusion of duplicative and nonduplicative PIP benefits is not persuasive. The legislative history is of no benefit in determining the scope and meaning of 40-284(e)(6). Since the en-

actment of K.S.A. 40-284(e)(6), the Kansas Insurance Department has consistently taken the position that the legislative intent behind that statute was merely to prevent double recoveries by insureds and not to authorize a first-dollar setoff in cases where no duplication of recoveries would occur.

KFB contends two Kansas cases, *Hetzel v. Clarkin*, 244 Kan. 698, 772 P.2d 800 (1989), and *Bardwell v. Kester*, 15 Kan. App. 2d 679, 815 P.2d 120 (1991), are relevant and support its position that both duplicative and nonduplicative PIP benefits may be excluded from coverage. We disagree. KFB cites language on page 708 of *Hetzel* that "K.S.A. 1988 Supp. 40-284(e)(6) allows insurers to limit the coverage under the uninsured motorist provision to the extent that PIP benefits have been paid," and concludes that language indicates that, in a case where damages were claimed to far exceed coverage, the court believed PIP benefits paid to plaintiff would be subject to setoff. KFB notes there is no indication in the court's discussion that a "duplicative" threshold is to be considered prior to the limitation.

KFB's conclusion as to what the court believed is unsupported by the language of the opinion. The statement in *Hetzel* referred to whether Hetzel had exhausted her remedies and could proceed under the Kansas Guaranty Act, K.S.A. 40-2905 *et seq.*

In *Bardwell v. Kester*, 15 Kan. App. 2d 679, Bardwell, a minor, was a passenger in an automobile driven by Gatlin. Gatlin's automobile was struck by an automobile driven by Kester. Bardwell was hospitalized with injuries he received in the collision. Farmers paid him $8,213.37 in PIP benefits as a covered family member under a Farmers policy issued to his father. In a friendly suit, Bardwell agreed to settle with Gatlin for $5,000, with Kester for $25,000, and with Farmers for $8,213.37. Farmers refused to pay the judgment under a setoff provision of its endorsement, authorized by K.S.A. 1990 Supp. 40-284(e)(6), which stated: "Any amount payable under the coverage shall be reduced by all sums payable for the same damages under any Personal Injury Protection." The trial court ruled that Farmers was not required to pay the judgment entered against it. Bardwell appealed, contending that the setoff provision of the insurance contract did not apply. He maintained the specific language of the Farmers policy

only allowed for a setoff of PIP benefits which are "payable," not benefits already paid.

The Court of Appeals, after applying the rules for construction of an insurance contract, found that the only reasonable construction of the language was that the parties intended to reduce underinsured motorist coverage benefits by the amount of all benefits that eventually became payable prior to judgment. The Court of Appeals concluded that reading the contract otherwise would allow a duplicative payment. The application of K.S.A. 40-284(e)(6) to the PIP benefits paid by the insurer for the insured was not discussed in *Bardwell.*

The purpose of the legislation mandating the offer of uninsured and underinsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. This coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages. See *Winner v. Ratzlaff,* 211 Kan. 59, Syl. ¶ 1, 505 P.2d 606 (1973).

The uninsured and underinsured motorist statutes are remedial in nature. They should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident and arise out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured or underinsured motorist. See *Simpson v. Farmers Ins. Co.,* 225 Kan. 508, 512, 592 P.2d 445 (1979). Other states have similarly found their uninsured and underinsured motorist statutes are remedial in nature and should be liberally construed to provide broad protection. See *American Service Mutual Insurance Co. v. Wilson,* 323 So. 2d 645 (Fla. Dist. App. 1975); and *Sinicropi v. State Farm Insurance Co.,* 55 App. Div. 2d 957, 391 N.Y.S.2d 444 (1977).

Uninsured and underinsured motorist coverage was developed by the Kansas Legislature as a means of protecting individuals from negligent uninsured or underinsured motorists. The purpose of K.S.A. 40-284 is to provide the individual who is covered by the standard automobile liability policy with a right against his

or her own insurer equal to that the insured would have against the uninsured or underinsured tortfeasor. *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 600, 549 P.2d 1354 (1976). We hold the legislature intended K.S.A. 40-284(e)(6) to permit an insured to recover underinsured motorist benefits which are not duplicative of PIP benefits. Any other result negates the legislature's intent to require underinsured motorist coverage protection.

Reversed and remanded for further proceedings.