No. 77,231

JAMES R. FISHER, TERRA M. HELM, and JOSHUA IAN HELM, by his conservator, FIRST UNITED NATIONAL BANK & TRUST CO. in Great Bend, Kansas, *Appellees,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant,* and THE KANSAS DEPARTMENT OF TRANSPORTATION and the ESTATE OF RALPH HORAN, deceased, *Defendants.*

(955 P.2d 622)

Opinion filed March 6, 1998.

*Harry M. Bleeker*, of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, argued the cause and was on the brief for appellant.

*M. John Carpenter*, of Carpenter Law Office, of Great Bend, argued the cause, and *Jane M. Isern*, of Brown & Isern Law Office, of Great Bend, and *Hugh D. Mauch*, of Great Bend, were with him on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Insured was killed in an automobile accident with an underinsured vehicle while in the course and scope of employment. After a trial, decedent's heirs obtained a judgment against the estate of the other vehicle's driver which exceeded the other driver's policy limits. Heirs moved to collect under the decedent's underinsured motorist policy provision. The district court awarded decedent's heirs $50,000 under the underinsured motorist coverage. Insurer appealed to the Court of Appeals, claiming that because the workers compensation benefits paid were in excess of damages awarded by the jury, the heirs had no claim against the underinsured motorist provision of the insurer's policy. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

On February 23, 1994, Katherine Fisher was riding in a vehicle that collided with a vehicle driven by Ralph Horan. Both Fisher and Horan were killed. Fisher was acting in the course and scope of her employment at the time of the accident. Subsequently, her husband, James, and a minor son, Joshua, entered into a $204,779.40 lump sum settlement for indemnification and medical expenses under the Workers Compensation Act. The settlement

included $3,300 in funeral benefits and $200,000 in death benefits for her husband and the minor child.

Subsequently, James, along with Katherine's daughter Terra (age 18, a partially dependent adult child) and Joshua, filed a civil action against the Kansas Department of Transportation (KDOT) and Horan's estate for wrongful death. At the time of her death, Fisher was insured by a State Farm Mutual Automobile Insurance Company (State Farm) policy which provided uninsured/underinsured motorist benefits of $100,000. Prior to trial, the heirs settled with Horan's estate for his policy limits of $50,000 and preserved all issues against the other parties. Since the policy covering the Horan vehicle had a limit of $50,000, Fisher's heirs asserted a claim for $50,000 underinsured motorist benefits against State Farm. State Farm was an active participant in all discovery and pretrial proceedings.

On October 28, 1994, the district court approved a settlement with the Horan estate. The judge allowed fees and expenses and apportioned the $50,000 settlement one-half to the surviving spouse, one-fourth to the minor child, and one-fourth to the adult child. The district court ordered that $37,500 of the settlement be paid to the workers compensation carrier, United States Fidelity and Guaranty Company, and $12,500 be paid directly to the adult child.

On the morning of trial, State Farm moved for dismissal as a named party, declined to intervene in the proceedings, and agreed to be bound by the final judgment. Despite being dismissed from the case, State Farm attended the instruction conference at trial and suggested that the verdict form contain a separate calculation under economic loss for loss of services or wages suffered by the heirs as a result of Fisher's death. The verdict form prepared by the judge and submitted to the jury did not contain the suggested change. At the conclusion of the trial, the jury returned a verdict of $126,000 and found KDOT not at fault, Horan 90 percent at fault, and Fisher 10 percent at fault. The verdict set the damages as:

A. Past noneconomic damages     $ 3,500
B. Future noneconomic damages     $ 65,000

| | |
|---|---|
| C. Past economic damages | $ 7,500 |
| D. Future economic damages | $ 50,000 |
| TOTAL: | $126,000 |

The portion collectable against Horan based upon his 90 percent fault was:

| | |
|---|---|
| A. Past noneconomic damages | $ 3,150 |
| B. Future noneconomic damages | $ 58,500 |
| C. Past economic damages | $ 6,750 |
| D. Future economic damages | $ 45,000 |
| TOTAL: | $113,400 |

Because the $113,400 verdict exceeded Horan's liability coverage, the heirs moved for a $50,000 judgment, the difference between the underinsured motorist limits and Horan's liability limits, against State Farm's underinsured motorist coverage. At the hearing on the heirs' motion, State Farm asserted it had no underinsured liability because the workers compensation settlement of $204,779.40 and the Horan estate's $12,500 payment to Terra had exceeded the $113,400 judgment. State Farm based this argument upon K.S.A. 40-284(e)(4) and the exclusion in its policy which provided:

"3. Any amount payable under this coverage shall be reduced by any amount paid or payable for the same damages to or for the insured:
(a) for bodily injury under the liability coverage; or
(b) under any workers' compensation law."

The district court entered a $50,000 judgment against State Farm.

## DISTRICT COURT OPINION

In its memorandum and order awarding judgment to the heirs against State Farm, the district court stated:

"The second issue is whether or not the plaintiffs are entitled to a judgment against State Farm Mutual Automobile Insurance Company. The plaintiffs allege they are entitled to a judgment against State Farm, who is the underinsured carrier for Katherine Fisher. The plaintiffs argue under the jury's verdict they should be entitled to receive from the underinsured carrier, State Farm Insurance, any amount awarded by the jury which are non-duplicative of workers' compensation benefits. State Farm Insurance argues under the jury's verdict and award there

are no non-duplicative amounts, or if there are, these amounts are small. As a result thereof, no payments or judgment should be awarded against State Farm Insurance.

"The Court finds there is no dispute between the parties concerning the funeral bill and expense therein. Workers' compensation benefits paid $3,300 of the funeral bill. Therefore that amount would be duplicative. However, there is a $2,798 balance on the funeral bill that has not been paid and would not be a duplicative payment.

"The real issues deal with the remaining jury award and whether it is or is not duplicative. The plaintiffs claim all the non-economic loss to date, $61,650, should be considered as loss of consortium and would be non-duplicative of the workers' compensation benefits. In addition, they argue, based upon the future economic loss of $45,000, part of that is for loss of services to the plaintiff's spouse, James Fisher, with some to be awarded to Terra Helm, the oldest child who was a partially dependent child under the workers' compensation benefits. The problem within this case is there was not a separation made by the jury on the verdict form as to loss of wages and loss of services under the economic loss argument. Therefore, the defendant State Farm Insurance argues the plaintiffs failed to meet their burden of proof and cannot guess what the jury was thinking when they awarded future economic loss [$45,000]. State Farm believes no amount should be attributable to loss of services for the plaintiff. In addressing this particular issue the Court would review applicable statutes to that factual issue. K.S.A. 44-504(b) states:

'In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium [noneconomic] or loss of services [economic] to a spouse.'

"When a statute is clear and unambiguous, the court must give effect to the express legislative intent without regard to what the court thinks the law should or should not be. Where a statute is clear and unambiguous it must be applied accordingly without judicial construction. *Kilner v. State Farm Mutual Automobile Insurance Co.*, 252 Kan. 675 (1992). It is clear from the *Kilner* case, as well as K.S.A. 44-504, the courts have construed the legislature intended to permit an insured to recover underinsured motorists benefits which are not duplicative of workers' compensation benefits. It is also clear from K.S.A. 44-504 there is a specific exception from a workers' compensation lien in that the loss of services to a spouse are excluded from recovery by an employer or an insurance company, and upon a determination of the amount, the loss of services to a spouse are not to be considered duplicative.

"In this case, of the $45,000 [in future economic damages], how much is to be attributed to loss of services to either Mr. James Fisher and his daughter Terra

Helm, and how much is to be attributed to loss of wages? It was not broken out within the jury verdict form as to the amount of loss of services and loss of wages. The attorney for State Farm Insurance did not actively participate in the trial but allowed the trial to proceed and he was bound by the verdict. No request was made by the attorneys actively participating in the case to specifically break down future economic loss into loss of wages and loss of services. The plaintiffs requested there not be a breakdown of the loss of wages and loss of services.

"The purpose of K.S.A. 1992 Supp. 40-284 is to provide the individual who is covered by the standard automobile liability policy with a right against his or her own insurer, up to the limits of the insured's coverage, that the insured would have against the uninsured or underinsured tortfeasor. *Kilner v. State Farm Mutual Automobile Insurance Company*, 252 Kan. 675, Syl. ¶ 3.

"The purpose of legislation mandating the offer of uninsured and underinsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. This coverage is intended to provide recompense to innocent persons damaged through the wrongful conduct of motorists who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages. *Kilner*, Syl. ¶ 1.

"It is clear from the *Kilner* case the legislative intent and the purpose of underinsured motorists coverage is to provide a means of collection of damages from parties or from their own insurance company to make them whole for a loss they incurred in which they were not responsible. Once again going back to the facts of this case, because of the lack of specification as to loss of services and loss of damages, this Court must make a determination as to what amount, if any, should be considered for loss of services. The Court heard the testimony from the plaintiff's economic expert who set forth his belief there was $152,000 loss of wages, and $110,000 for loss of services. The jury, however, disregarded that testimony and came back with a total amount of around $51,750 of economic loss, both present and future. It would seem clear the jury disregarded the testimony of the expert, to some extent, in that they did not allow the amount requested for loss of wages or for loss of services. The amount requested for loss of services was $110,000 and $152,000 for loss of wages for a total of $262,000. The plaintiffs would ask the Court to take the percentage of the amount requested for loss of services, which is 42% of the total amount requested, and apply that toward the $45,000 for future economic loss. The Court would find that evidence was presented in support of both loss of wages and loss of services. The Court will award 42% of the $45,000 future economic loss for loss of services which comes to a total of $18,900 for total loss of services to the plaintiffs. Of that $18,900, the Court awards $4,725, which is 25%, to the plaintiff Terra Helm for her loss of services, and the balance to the surviving spouse James Fisher.

"The Court must then consider the claim of the plaintiff[s] that they are entitled to the full $61,650 they were awarded for non-economic loss to date and future non-economic loss as a result of a loss of consortium. Once again the Court must go to K.S.A. 44-504 which very specifically states an employer shall not be sub-

rogated to any recovery for loss of consortium or loss of services to a spouse. The statute is clear and unambiguous and the Court must follow the statute as it is written.

"The definition for loss of consortium is as follows:

'Conjugal fellowship of husband and wife, and the right of each to the company, society, cooperation, affection, and aid of the other in every conjugal fellowship.'

"It goes on to speak of loss of society, affection, assistance, and conjugal fellowship.

"The Court, in instruction number 19, discussed the two types of damages that could be awarded. The first type of damage was non-pecuniary loss, which stated as follows:

'This type of damages includes (a) mental anguish (b) bereavement, loss of society, comfort and loss of companionship which you find has been and will be sustained by plaintiff because of the wrongful death of his spouse.'

"The definition of consortium and the definition of damages for non-pecuniary loss are very similar and can be interpreted to be one in the same. State Farm fails to address this issue in their brief. State Farm argues when all the workers' compensation payments are added up, they will far exceed the total jury award. Workers' compensation benefits are separate and distinct from loss of service and loss of consortium, as set out in the statute. Any non-duplicative payments can be collected by the plaintiff. The Court finds the amount of non-economic loss and future non-economic loss awarded by the jury shall be deemed to be non-duplicative payments for loss of consortium to the spouse and shall be paid to the spouse in full. When totaling all the damages they exceed the amount of judgment that can be entered against State Farm Insurance, which would be $50,000 of uninsured coverage. Therefore, the Court orders a judgment against the defendant State Farm Mutual Insurance Company for $50,000 shall be granted to the plaintiff and should be paid into court."

State Farm appealed.

## DISCUSSION

*General Rules*

This case involves the construction of K.S.A. 40-284(e)(4) and K.S.A. 44-504(b). K.S.A. 40-284(e)(4) provides in part:

"(e) Any insurer may provide for the exclusion or limitation of [underinsured motorist] coverage:

. . . .

"(4) to the extent that workers' compensation benefits apply."

K.S.A. 44-510b(a)(1) defines the eligibility for workers compensation benefits as follows:

"If the employee leaves a surviving legal spouse or a wholly dependent child or children, or both, who are eligible for benefits under this section, then all death benefits shall be paid to such surviving spouse or children, or both, and no benefit shall be paid to any other wholly or partially dependent persons."

In 1993, the legislature amended K.S.A. 1992 Supp. 44-504(b) (the workers compensation subrogation statute) to provide:

"In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against *the entire amount* of such recovery, *excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees.*" (L. 1993, ch. 286, § 26. July 1, 1993.)

Regarding statutory construction, it is fundamental that the intent of the legislature governs and, when construing a statute, a court should give words in common usage their natural and ordinary meaning. See *Galindo v. City of Coffeyville*, 256 Kan. 455, 465, 885 P.2d 1246 (1994). Legislative intent must be derived from the language of the statute, and where the language used is plain and unambiguous, the court must follow the intent as expressed by the words used. *State v. V.F.W. Post No. 3722*, 215 Kan. 693, 695, 527 P.2d 1020 (1974); *City of Overland Park v. Nikias*, 209 Kan. 643, 646, 498 P.2d 56 (1972).

In 1968, the Kansas Legislature enacted the uninsured motorist statute, K.S.A. 1968 Supp. 40-284. This statute allowed motorists who incurred damages in an automobile accident to recover benefits for those damages from their own insurance company when the accident occurred with an uninsured motorist. In 1981, the legislature amended the law to also include coverage for underinsured motorists. K.S.A. 40-284 (Ensley).

The uninsured and underinsured motorist statutes are remedial and should be liberally construed. They provide broad protection to the insured against damages for bodily injury in an automobile accident caused by an uninsured or underinsured motorist when that accident arises out of the ownership, maintenance, or use of

the insured's motor vehicle. *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. 209, 215, 824 P.2d 955 (1992). Underinsured motorist coverage provides the individual who is covered by the standard automobile liability policy with a right against his or her own insurer equal to that the insured would have against the uninsured or underinsured tortfeasor. *Rich*, 250 Kan. at 215-16; *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 600, 549 P.2d 1354 (1976). However, K.S.A. 40-284(e)(4) provides that any insurer may exclude or limit coverage to the extent that workers compensation benefits apply.

State Farm argues on appeal that the trial court erred in enforcing the judgment under the underinsured motorist provision of its policy because "by definition, [the insured's policy states] workers' compensation benefits paid to an insured in excess of all actual losses are duplicative of underinsured motorist benefits."

To support its argument, State Farm cites *Rich*, 250 Kan. 209, and *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 847 P.2d 1292 (1993). The issue in *Rich* was the definition of a duplicative personal injury protection (PIP) benefit pursuant to K.S.A. 40-284(e)(6). In *Kilner*, the issue was what is a duplicative workers compensation benefit pursuant to K.S.A. 40-284(e)(4). State Farm asserts that both *Rich* and *Kilner* determined what benefits were duplicative based upon whether the insureds were completely compensated for their loss. State Farm asserts that in *Rich*, the parties stipulated that the actual damages would exceed all possible liability, underinsured motorist, and PIP coverage available to the plaintiffs. In *Kilner*, the parties stipulated that the plaintiff's actual damages would exceed all available PIP benefits, workers compensation benefits *paid and payable*, liability limits, and underinsured motorist coverage available. As such, the plaintiffs in *Rich* and *Kilner* had an uncompensated loss that was not duplicative and that could not be set off against the underinsured motorist coverage. Based on its analysis, State Farm asserts that in each case, PIP benefits and workers compensation benefits were subtracted from the net proceeds of the judgment. It observes that, to the extent any uncompensated balance remained, the balance was determined to be non-duplicative. State Farm concludes that in the

present case, the plaintiffs have no uncompensated loss. In fact, State Farm claims that because of the $204,779.40 workers compensation payment, the heirs of the decedent received $103,879.40 more than their actual loss.

This court has addressed related issues in several prior cases.

In *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 708 P.2d 533 (1985), the appeal arose out of a workers compensation claim by plaintiff against his employer, the Kansas Highway Patrol, after a collision with a third party. The plaintiff, who had entered into a lump-sum settlement that did not specify the particular elements of damage with a third-party tortfeasor, argued on appeal that certain portions of the settlement were not compensable under the Workers Compensation Act and, therefore, those portions were not subject to subrogation by his employer.

Houston contended that he should be compensated for sick pay, holiday pay, and loss of personal property, which were not compensable under workers compensation or subject to subrogation. After affirming the trial court's denial of Houston's claim for personal losses, the court noted:

"Had the settlement documents clearly stated a certain amount was specifically for these personal noncompensable losses and had such amount been supportable in fact (as opposed to an effort to circumvent the operation of the statute), a much stronger argument in support of claimant's position could have been made. Such is not the situation before us. We conclude the trial court did not err in denying claimant the right to take his claimed personal losses off the top of the settlement." 238 Kan. at 196.

In *Rich*, 250 Kan. 209, Lavin was a passenger injured in a one-vehicle accident. Both the driver and the owner of the vehicle paid the liability limits of their policies in settlement with Lavin. Lavin's $100,000 underinsured motorist coverage exceeded the combined $75,000 liability coverages of the owner and driver of the vehicle ($50,000 + $25,000) by $25,000. The parties agreed that the maximum liability coverage and PIP benefits plaintiff was entitled to receive were $177,000. Lavin made claim for underinsured motorist benefits against his own automobile liability insurance carrier, KFB Insurance Company, Inc. (KFB).

KFB denied the estate's claim for $25,000 on grounds the $40,667.52 in PIP benefits it paid Lavin exceeded his $25,000 claim for underinsured motorist benefits; therefore, pursuant to 40-284(e)(6), the $25,000 claim should be offset against the PIP benefits already paid. The parties stipulated that a court or jury would find Lavin's actual damages exceeded $177,000. The parties also stipulated that none of the damages plaintiff claimed under the underinsured motorist coverage were damages to which PIP benefits "apply." The issue in *Rich* was whether Lavin's estate was entitled to the $25,000 of underinsured motorist benefits or whether the insurer was entitled to offset the $25,000 of underinsured motorist coverage against the nonduplicative PIP benefits it had paid.

The district court ruled that 40-284(e)(6) allowed the insurer to reduce the underinsured motorist coverage by PIP payments it had already made. The court held the $25,000 of underinsured motorist coverage could be set off against the PIP nonduplicative payments and, thus, the insurer had no further liability to its insured. Lavin's estate appealed, claiming 40-284(e)(6) allowed setoff of the underinsured motorist benefits only if the benefits were duplicative of the PIP benefits the insurer previously paid. The *Rich* court held that the legislature intended 40-284(e)(6) to permit an insured to recover underinsured motorist benefits which are not duplicative of PIP benefits. It declared that to allow the insurer to set off nonduplicative PIP benefits negates the legislature's intent to require underinsured motorist coverage protection. 250 Kan. at 216.

In *Kilner*, 252 Kan. 675, plaintiff appealed the district court's grant of summary judgment allowing the insurer, State Farm, pursuant to K.S.A. 40-284(e)(4), to offset against its underinsured motorist coverage liability nonduplicative workers compensation benefits paid by the employer. Kilner was injured in an automobile accident with Owen. At the time of this accident, Kilner was driving a pickup truck owned by his employer, Dick Edwards Ford, and was acting in the scope of his employment. The employer's pickup was insured through Federated Mutual Insurance Company with a $50,000 single limit for liability of uninsured/underinsured motorist coverage. Kilner insured his personal vehicles with State

Farm. His uninsured/underinsured motorist coverage limits with State Farm were $100,000 per person and $300,000 per occurrence. Owen's pickup was insured by Dairyland Insurance Company (Dairyland) with a $25,000 liability limit.

Kilner filed a workers compensation claim against Dick Edwards Ford and its workers compensation insurance carrier, Federated. Kilner had received workers compensation benefits of $89,872.45. Of this amount, $62,224.45 was paid for medical expenses. Kilner continued to receive payments for permanent partial disability at the rate of $256 per week. State Farm paid PIP benefits to the plaintiff in the amount of $14,721 for lost wages and interest on lost wages. Kilner's claim for damages against Owen exceeded by more than $75,000 the aggregate of PIP benefits paid and workers compensation benefits paid and payable. The parties also agreed that Owen was 100% at fault in causing the accident and that the plaintiff would be entitled to recover $75,000 underinsured motorist coverage from State Farm if duplicative workers compensation benefits were excluded. The question was: Does 40-284(e)(4) allow the offset of underinsured motorist benefits for every dollar of workers compensation benefits received, or just where underinsured motorist benefits duplicate the workers compensation benefits?

In *Kilner*, State Farm asserted that *Rich's* rationale applicable to 40-284(e)(6) (the PIP setoff provision) did not apply to 40-284(e)(4) (the workers compensation setoff provision) because PIP benefits and workers compensation benefits were fundamentally different. It was State Farm's position that underinsured motorist benefits may be offset against all workers compensation payments whether or not the underinsured motorist benefits are duplicative of the workers compensation payments. State Farm contended that because of the absence of the word "duplicative" in 40-284(e)(4), the standard rules of statutory construction prevented courts from inserting that language into that statute. It argued that while in *Rich* there was a compelling reason to maintain consistency between PIP subrogation and PIP setoff, there was no reason to do so for workers compensation. State Farm believed it significant that PIP benefits are purchased by the insured through the payment of

a separate premium. State Farm pointed out that workers compensation benefits are not purchased by the insured but are a collateral benefit to the insured through premiums paid by the insured's employer. It argued that this distinction between PIP benefits and workers compensation benefits mandated disparate interpretation of the dissimilar setoff provisions of 40-284(e)(4) and (e)(6).

The *Kilner* court reviewed *Rich.* In rejecting State Farm's position, the *Kilner* court observed that (1) the *Rich* court had noted that the insurer charges separate premiums for uninsured motorist coverage and for underinsured motorist coverage; (2) Kilner's employer's insurer paid its workers compensation insurer premiums as a condition of Kilner's employment, and (3) Kilner paid State Farm a separate premium for his underinsured motorist coverage. 252 Kan. at 684. The *Kilner* court then held that K.S.A. 40-284(e)(4) allows an insurer to exclude or limit its uninsured and underinsured motorist coverage to the extent that duplicative workers compensation benefits apply. It concluded that the legislature intended K.S.A. 40-284(e)(4) to permit an insured to recover underinsured motorist benefits which are not duplicative of workers compensation benefits and that any other result would negate the legislature's intent to require underinsured motorist coverage protection. 252 Kan. at 686.

For purposes of this appeal, it is important that in 1993, the legislature amended K.S.A. 1992 Supp. 44-504(b). The intent of the 1993 amendment to K.S.A. 1992 Supp. 44-504(b) was to exclude damages for loss of services and loss of consortium from subrogation because they are not compensable under the Workers Compensation Act.

State Farm's position that it is entitled to a dollar for dollar setoff of all workers compensation payments against its underinsured motorist coverage is contradicted by prior case law. The cases previously cited stand for the proposition that a setoff is allowable only insofar as workers compensation payments are duplicative of other damages, even in a case where workers compensation benefits paid to an insured are in excess of damages assessed at trial. *Kilner* clearly held that K.S.A. 40-284(e)(4) permits an insured to recover

underinsured motorist benefits which are not duplicative of workers compensation benefits. 252 Kan. at 686.

*The Effect of K.S.A. 44-510b(a)(1)*

In addressing the construction of K.S.A. 44-504(b) and its effect on State Farm's entitlement to set off amounts for loss of services and loss of consortium in this case, the heirs point out that K.S.A. 44-510b(a)(1) defines the eligibility for workers compensation benefits as follows:

> "If the employee leaves a surviving legal spouse or a wholly dependent child or children, or both, who are eligible for benefits under this section, then all death benefits shall be paid to such surviving spouse or children, or both, and no benefits shall be paid to any other wholly or partially dependent persons."

Under this provision, the decedent's daughter, Terra (age 18), an adult but partially dependent child, had no entitlement to workers compensation benefits. Terra was entitled to recover under K.S.A. 60-1902, the wrongful death statute. The evidence in the case supported Terra's claim of both an economic and noneconomic loss (loss of support) due to the death of her mother. Terra lived with her mother during high school. After her graduation, Terra and her mother maintained their close relationship and Terra continued to receive financial support from her mother. The district court recognized this fact when it apportioned one-fourth of the $50,000 from the Horan estate settlement to Terra while reimbursing the other three-fourths to the workers compensation carrier as duplicative payments. As stated in the plaintiffs' brief, given a total (post-trial) collectable verdict of $113,400 and assuming the same apportionment, Terra's share would be $28,350, which would not be duplicative of any workers compensation payments. If the $12,500 which Terra previously received is deducted, $15,850 would remain to be paid to Terra from the $50,000 underinsured motorist policy limits. State Farm fails to address this issue in its brief.

K.S.A. 44-504(b) clearly provides that an employer shall not be subrogated to any recovery for loss of consortium or loss of services to a spouse. Black's Law Dictionary 309 (6th ed. 1990) defines "consortium" as "[c]onjugal fellowship of husband and wife, and

the right of each to the company, society, cooperation, affection, and aid of the other in every conjugal fellowship." In jury instruction No. 19, the trial judge defined noneconomic loss and correctly determined: "This type of damage includes (a) mental anguish (b) bereavement, loss of society, comfort and loss of companionship which you find has been and will be sustained by plaintiff because of the wrongful death of his spouse."

The jury awarded a total of $61,650 for noneconomic damages which, as defined by the trial court, equated to damages for loss of consortium. If one-half of this amount is apportioned to James Fisher, his share would be $30,975. Totaling the three items of damage, Terra Helm's loss of $15,850, James Fisher's economic loss of $2,608 for the unpaid portion of the funeral bill, and James Fisher's portion of the noneconomic damages of $30,975, the total is $49,433. These amounts are clearly nonduplicative of workers compensation benefits and nearly total the maximum recovery ($50,000) under State Farm's underinsured motorist provision.In addition, because K.S.A. 44-504(b) also excludes loss of services from subrogation since such loss is not recoverable in a workers compensation proceeding, State Farm cannot exclude loss of services from coverage under its underinsured motorist provision.

*Amount of Judgment*

As previously noted, prior to trial, State Farm filed a motion for dismissal as a named party, declined to intervene, and agreed to be bound by the judgment. State Farm now attempts to argue that because the plaintiffs "affirmatively prevented" a breakdown on the verdict form between "economic and noneconomic damages," they are "estopped" from enforcing a judgment against State Farm. In fact, there was a breakdown of these two categories. What State Farm actually refers to is the fact that the verdict form did not separate loss of services from other economic damages (loss of wages).

The district court was not troubled by State Farm's argument, pointing out that extensive evidence had been presented during trial as to damages for loss of services, and the trial judge found he could make a determination of this damage amount. In determin-

ing the separate amounts, the district court noted that the amount requested for loss of services was $110,000 and for loss of wages was $152,000, for a total of $262,000. Since the percentage of the amount requested for loss of services, was 42% of the total amount requested, the court awarded 42% of the $45,000 future economic loss for loss of services, which comes to a total of $18,900 for total loss of services to the plaintiffs. Of that $18,900, the court awarded $4,725, which is 25%, to Terra Helm for her loss of services and the balance to the surviving spouse, James Fisher.

The court also found that substantial evidence of loss of services (as well as loss of consortium) was presented at trial. After the Fishers' marriage, Terra resided with James and Katherine. Joshua was living in Great Bend with his father, Mark Helm. Joshua spent every other weekend with James and Katherine, and during the summer he would move to their home and spend approximately 2 months there. They had a four-bedroom home, and one of the bedrooms was for Joshua. He kept things in his room such as his T.V., radio, etc. Following Terra's graduation from high school, her mother helped her move into her own apartment and helped her buy furniture, household utensils, and other things necessary for housekeeping. Subsequently, Terra worked part-time but she saw her mother every day. They would either have lunch together or Katherine would stop by Terra's home after work or Terra would stop by their home.

Jim and Katherine shared an interest in photography and travel. It was common for the whole family to take a trip to a friend's ranch in New Mexico, where they would spend a lot of time together. Katherine cooked and took care of the house and the laundry. In 1989, Jim had a heart attack and Katherine took charge of his diet. During their marriage, Jim and Katherine were together virtually 24 hours a day.

Terra testified she and her mother would clean house, go shopping, and go to movies together. During her years growing up, she relied on her mother for advice and guidance, and this continued even after she moved out of the house. If Terra had problems, she would talk to her mother. Even after Terra left home, her mother continued to help her financially. Terra saw her mother every day.

Terra's baby was born 6 days after her mother was killed, and Terra had counted on her mother to teach her how to care for the baby.

Ordinarily one who is dismissed as a party from a civil action cannot complain as to the compensation of the verdict form. See *In re Estate of Beason*, 248 Kan. 803, Syl. ¶ 4, 811 P.2d 848 (1991). However, a party that is dismissed from a civil action at its request, declines its right to intervene in the proceeding, and agrees to be bound by the amount of the judgment cannot later appeal the amount of the judgment. Under these circumstances, we are not required to approve or disapprove the judge's method in determining the amount of the judgment against State Farm.

Affirmed.

SIX, J., concurs in the result.