Tom Krueger, Counsel Unified School District No. 253 Administration Building 501 Merchant, Box 1008 Emporia, Kansas 66801-1008
Dear Mr. Krueger:
On behalf of the Board of Education for Unified School District No. 253, you request our opinion regarding the ability of a unified school district to establish and maintain an early retirement incentive program for employees of the school district. Specifically, you ask the following four questions:
 "1. The Emporia School District's early retirement policy has no mechanism for determining the penalty from either FICA or KPERS for retiring early. Since this is the sole authority that a school district has to establish an early retirement policy, if the district does not determine the penalty from FICA and/or KPERS[,] is the policy in violation of Kansas law?
. . . .
 "2. Kansas statute allows districts to provide early retirement for the purpose of reducing the penalty from FICA for retiring early. However, an employee does not qualify for benefits under FICA until they are 62 years of age. If an employee does not qualify for FICA benefits, does the inability to secure FICA benefits qualify as a penalty? How does the district determine what this penalty is in order to ensure that the early retirement payment does not exceed the penalty?
. . . .
 "3. An employee that earns 85 points under KPERS qualifies for full KPERS benefits and thus is not penalized for `retiring early.' If the employee continues to work for another employer without drawing FICA benefits, then the employee is not penalized under FICA for retiring early. If the district pays benefits to this employee for retiring early, is the district in violation of the early retirement statute?
. . . .
 "4. The Emporia School District's early retirement policy has a differential rate for individuals with differing ages. Does this policy violate the federal Age Discrimination in [E]mployment [A]ct? Does this policy violate the intent under Kansas statute for establishing an early retirement system for the purpose of reducing the penalty of FICA and/or KPERS?"[1]
Unified school districts are authorized to "establish an early retirement incentive program for the benefit of the employees of the district for the purpose of reducing in whole or in part, the penalty under the federal insurance contributions act [FICA] or the Kansas public employees retirement system [KPERS], or both, for retirement prior to the normal retirement age of 65 years."[2] The early retirement incentive program may provide for cash payments either in a lump sum at the beginning of a fiscal year, or in regular payments during the fiscal year.[3]
In reviewing a school district's obligations regarding its early retirement incentive program, it must be remembered that a school district in Kansas has only such power and authority as has been delegated to it under State law. "A school district is an arm of the state existing only as a creature of the legislature to operate as a political subdivision of the state. A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication."[4]
The fundamental rule of statutory construction is that the intent of the Legislature, when it can be ascertained, governs the construction of a statute.[5] "Legislative intent must be derived from the language of the statute, and where the language used is plain and unambiguous, the court must follow the intent as expressed by the words used."[6] Where the language used in a statute is plain and unambiguous and also appropriate to an obvious purpose, the court should follow the intent as expressed by the words used.[7]
A unified school district is authorized to establish an early retirement incentive program which reduces in whole or in part the penalty under FICA or KPERS for early retirement. Any payment under an early retirement incentive program which exceeds such penalty would be beyond the authority conferred upon the school district. Therefore, in order to ensure that a school district remains within its authority, it is advisable that the school district have in place some mechanism or procedure for establishing the penalty incurred under FICA or KPERS by an employee who retires before the normal retirement age of 65 years. However, the existence of such a mechanism is not statutorily required. The fact that the early retirement incentive plan of a unified school district does not have such a mechanism in place does not by itself invalidate the plan.
In order to address the second issue you present, it is necessary to interpret the term "penalty" as used in K.S.A. 1998 Supp.72-5395. Rules of statutory construction are set forth in Boardof County Comm'rs of Ness County v. Bankoff Oil Co.[8]
 "The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature. As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. A construction of a statute should be avoided which would render the application of a statute impracticable or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases or clauses at some place in the statute must be omitted or inserted. In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof in pari materia. . . ."[9]
As noted previously, it is a fundamental rule of statutory construction that the intent of the Legislature governs and, when construing a statute, a court should give words in common usage their natural and ordinary meaning.[10] "In its plain ordinary sense `penalty' means to be put to a disadvantage, loss or hardship due to some action, such as a transgression or error."[11] It is defined in part in Webster's Third New International Dictionary as:
 "2: the suffering or the sum to be forfeited to which a person subjects himself by covenant or agreement in case of nonfulfillment of stipulation and which is if imposed in good faith as liquidated damages in general recoverable and enforceable in equity: FORFEITURE, FINE 3: disadvantage, loss, or hardship due to some action (as transgression or error) 4: a disadvantage (as loss of yardage, time, or possession of the ball) imposed for violation of the rules of a contest. . . ."[12]
"The Social Security Act and its subsequent amendments provide a system of old-age and retirement benefits. 26 U.S.C. § 3101 etseq. (1976 ed. and Supp.III). These benefits are supported by various taxes, including . . . the Federal Insurance Contributions Act (FICA) and the Federal Unemployment Tax Act (FUTA) taxes."[13] The amount of old-age insurance benefit to which a person is entitled is determined by a formula published by the Commissioner of Social Security utilizing average indexed monthly earnings and benefit computation years.[14] A person is deemed to reach "retirement age" when the person turns 65 years of age.[15] While a person is entitled to receive a monthly old-age insurance benefit upon attaining the age of 62,[16]
the amount of the monthly benefit is reduced pursuant to a formula enacted by Congress.[17]
The reduction in the monthly old-age insurance benefit pursuant to the formula adopted by Congress is the sum to be forfeited when a person retires prior to retirement age as established in the Social Security Act. This reduction is the "penalty" referred to in K.S.A. 1998 Supp. 72-5395. If a person retires at an age prior to the ages established in the Social Security Act for eligibility to receive a monthly old-age insurance benefit, the person is not entitled to receive any such benefit. While the inability to receive a benefit may be seen as a penalty, there appears to be no mechanism for determining the amount of the penalty. Any figure viewed as a penalty at this stage would merely be a best guess. The statute should not be interpreted as requiring the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act. Therefore, the penalty under FICA that may be reduced in whole or in part through benefits provided under a school district's early retirement incentive program is the amount the monthly old-age insurance benefit provided under the Social Security Act is reduced pursuant to the formula adopted by Congress.
The third issue presented, like the first, is governed by the authority conferred upon the school district. As previously noted, a school district has only such power and authority as is granted by the Legislature and is only such as is conferred either expressly or by necessary implication. The plain language of K.S.A. 1998 Supp. 72-5395 authorizes a unified school district to "establish an early retirement incentive program for the benefit of the employees of the district for the purpose of reducing in whole or in part, the penalty under (FICA) or (KPERS), or both, for retirement prior to the normal retirement age of 65 years." The authority of the school district is limited to establishing an early retirement incentive program which reduces in whole or in part the penalty incurred under FICA or KPERS for retiring before the normal retirement age. A school district exceeds its statutory authority if it confers a benefit under an early retirement incentive program to an employee who has not incurred a penalty under FICA or KPERS for retiring early.
The final issue presented requires a review of the rights protected under the Age Discrimination in Employment Act (ADEA).[18] The ADEA was enacted "to promote employment of older persons based on their ability rather than their age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment."[19] Under the provisions of the ADEA:
"It shall be unlawful for an employer —
 "(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
 "(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
 "(3) to reduce the wage rate of any employee in order to comply with this chapter."[20]
Responding to opinions of the United States Supreme Court inUnited Air Lines, Inc. v. McMann[21] and Public EmployeesRetirement System of Ohio v. Betts,[22] Congress adopted the Older Workers' Benefit Protection Act of 1990 (OWBPA),[23]
amending subsection (f) of 29 U.S.C.A. § 623. In its present form, subsection (f) states that it is not unlawful for an employer:
 "(B) to observe the terms of a bona fide employee benefit plan —
 "(i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, as permissible under section 1625.10, title 29, Code of Federal Regulations (as in effect on June 22, 1989); or
 "(ii) that is a bona fide early retirement incentive plan consistent with the relevant purpose or purposes of this chapter."[24]
The effect of the amendment was to subdivide employee benefit plans into two categories: employee benefits and early retirement incentive plans.
 "Section 4(f)(2)(B)(i) governs employee benefits and expressly adopts the `equal benefit or equal cost' principle, once and for all, ending judicial speculation as to the exact meaning of the earlier `subterfuge' provision. The only justification for an age-based reduction in employee benefits is the increased cost in providing those benefits to older workers.
 "Section 4(f)(2)(B)(ii) controls early retirement incentive plans and, significantly, contains no such increased cost language. In other words, the `equal benefit or equal cost' rule has no application in the retirement incentive plan context. Thus, § 4(f)(2)(B)(ii) does not require that an employer provide identical early retirement incentives for employees of different ages or incur the same costs for all employees. Rather, the early retirement incentive plan need only be voluntary and consistent with the ADEA's relevant purpose(s). The legislature has identified one overriding relevant purpose — the protection of employees from arbitrary age discrimination."[25]
Through its adoption of the OWBPA, Congress clearly authorized early retirement incentive plans which include "a time-related window during which employees, upon attaining a specified age, are offered for a limited period of time a special incentive to retire."[26] However, "[a]n early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older workers conflicts with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment."[27] Therefore, a plan which: (1) is truly voluntary, i.e., the option is not accompanied by fraud, threats of imminent layoffs, intimidation, or subtle coercion; (2) gives employees a reasonable amount of time to consider their options and make an informed choice; and (3) provides benefits based on a flat dollar amount and/or service-based criteria will survive scrutiny under the ADEA and OWBPA.[28]
It appears the Tenth Circuit has not reviewed an early retirement plan providing benefits on a sliding scale based on the age of the retiring employee. However, at least two other Circuits have reviewed such plans.
In Karlen v. City Colleges of Chicago,[29] the Seventh Circuit Court of Appeals reviewed the early retirement plan of the City Colleges of Chicago, adopted as part of a collective bargaining agreement. The plan was available to employees between 55 and 69 years of age.[30] Two features of the plan were challenged.
 "The first relates to accumulated sick leave. A faculty member who is between the ages of 55 and 58 when he takes early retirement is entitled to receive, in addition to his pension, a lump sum equal to 50 percent of his accumulated sick pay, valued at his base salary rate in his final year of service. The percentage rises to 60 percent for 59-year-olds and 80 percent for 60- to 64-year-olds, then plunges to 45 percent for 65- to 70-year-olds. Retirement is mandatory at 70. Not until 1994 does the [ADEA] eliminate mandatory retirement for academic employees. See Act of Oct. 31, 1986, Pub.L. 99-592, § 6(b) (repealing 29 U.S.C. § 631(d) as of Dec. 31, 1993).
 "The second feature . . . is that while faculty members who retire between the ages of 55 and 64 continue to be covered by the Colleges' group insurance policy (which includes life, health, dental, vision, homeowner's, and automobile insurance) until they reach the age of 70, those who retire at age 65 or later cease, upon retirement, to be covered. Although they can continue to buy this insurance at the rate in the Colleges' policy, they are out the premiums, which covered employees do not pay."[31]
The Court of Appeals acknowledged that "an early retirement plan that treats you better the older you are is not suspect under [ADEA]."[32] However, the plan reviewed here actually discriminated against the older employee because the benefits plummeted at age 65.[33] "In effect the City Colleges had two early retirement programs; a munificent one for workers 55 to 64 and a chintzy one for workers 65 to 69."[34] The City Colleges then had the obligation to show the early retirement plan was "(1) part of a bona fide employee benefit plan, and (2) not a subterfuge."[35] The Court of Appeals, therefore, reversed the summary judgment awarded the City Colleges by the District Court and remanded the case for "the trial the [employees] were erroneously denied."[36]
The Eighth Circuit Court of Appeals reviewed in Patterson v.Independent School Dist. #70[37] an early retirement plan based on statutes enacted by the State of Minnesota. The plan provided for an incentive payment of $10,000 to an employee who was eligible for normal retirement at age 55. For each year between the ages of 55 years and 60 years, the amount of the incentive payment was reduced by $500. For each year over 60, the incentive payment was reduced by $1,500. The incentive payment was in accordance with the provisions of M.S.A. § 125.611.[38]
In addition, the plan provided for a severance payment based on accumulated vacation and/or sick leave. The severance payment was authorized under M.S.A. § 465.72.[39] Relying on McMann, the Court determined that the plan did not empower the employer to "`forcibly retire older workers'" and, therefore, as a voluntary plan, "did not `conflict with the Congressional goal' of promoting employment of older persons `based on their ability rather than age.'"[40] In affirming the judgment, the Court stated, "[o]bviously a man of 67 can not [sic] retire at age 55 and obtain benefits provided for persons of that age. And to effect the purpose of encouraging early retirement, the sliding scale of diminishing benefits is manifestly appropriate."[41]
After reviewing the opinions in Karlen and Patterson, we believe the analysis set forth in Karlen is the appropriate analysis to be applied today to early retirement incentive plans which provide benefits on a sliding scale based on the age of the employee. As noted earlier, Congress enacted the OWBPA in response to the decisions of the United States Supreme Court in McMann and Betts. Because the opinion of the Court in Patterson was based in part onMcMann, the appropriateness of the analysis set forth in Patterson
to the law as it presently exists is clouded. In addition, the Court in Auerbach indicated that early retirement incentive plans that withheld or reduced benefits available to older plan participants, when such reductions were based on age rather than other factors such as length of service, conflicted with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment. The Court in Auerbach had the benefit of the clarification provided by Congress through its enactment of the OWBPA. An early retirement incentive plan which provides benefits on a sliding scale based solely on the age of the plan participants, resulting in a reduction of the benefits available to older plan participants, violates the ADEA as amended by the OWBPA.
In review, in order to ensure that a unified school district remains within the authority conferred under K.S.A. 1998 Supp.72-5395, it is advisable that the school district have in place some mechanism or procedure for establishing the penalty incurred under FICA or KPERS by an employee who retires before the normal retirement age of 65 years. However, the existence of such a mechanism is not statutorily required and thus the fact that the early retirement incentive plan of a unified school district does not have such a mechanism in place does not, in and of itself, invalidate the plan. A person is deemed to reach "retirement age" when the person turns 65 years of age. While a person is entitled to receive a monthly old-age insurance benefit upon attaining the age of 62, the amount of the monthly benefit is reduced pursuant to a formula enacted by Congress. This reduction is the "penalty" referred to in K.S.A. 1998 Supp. 72-5398. The authority of the school district is limited to establishing an early retirement incentive program which reduces in whole or in part the penalty incurred under FICA or KPERS for retiring before the normal retirement age. A school district exceeds its statutory authority if it confers a benefit under an early retirement incentive program to an employee who has not incurred a penalty under FICA or KPERS for retiring early. An early retirement incentive plan which provides benefits on a sliding scale based solely on the age of the plan participants, resulting in a reduction of the benefits available to older plan participants, violates the ADEA as amended by the OWBPA.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Correspondence, Todd Covault, April 9, 1998.
[2] K.S.A. 1998 Supp. 72-5395.
[3] Id.
[4] NEA-Wichita v. U.S.D. No. 259, 234 Kan. 512, 517 (1983), quoting Gragg v. U.S.D. No. 287, 6 Kan. App. 2d 152, Syl. ¶ 3 (1981). See also Miller v. Board of Education, U.S.D. No. 470,12 Kan. App. 2d 368, 373 (1987).
[5] Bittel v. Farm Credit Services of Cent. Kansas,265 Kan. 651, 655-56 (1998).
[6] Fisher v. State Farm Auto. Mut. Ins. Co., 264 Kan. 111,118 (1998).
[7] Biritz v. Williams, 262 Kan. 769, 774 (1997).
[8] 265 Kan. 525 (1998).
[9] Id. at 538 (internal quotation marks and citations omitted).
[10] Fisher, 264 Kan. at 118.
[11] State v. Finley, 199 Kan. 615, 619 (1967).
[12] Webster's Third New International Dictionary, 1668 (1986).
[13] United States v. Lee, 455 U.S. 252, 254, n. 1,71 L.Ed.2d 127, 102 S.Ct. 1051 (1982).
[14] 42 U.S.C.A. § 415.
[15] 42 U.S.C.A. § 416(l)(1).
[16] 42 U.S.C.A. § 402(a); 42 U.S.C.A. § 415(a)(3)(B);42 U.S.C.A. § 416(l).
[17] See 42 U.S.C.A. § 402(q)(1).
[18] 29 U.S.C.A. §§ 621 et seq.
[19] 29 U.S.C.A. § 621(b).
[20] 29 U.S.C.A. § 623(a).
[21] 434 U.S. 192, 54 L.Ed.2d 402, 98 S.Ct. 444 (1977).
[22] 492 U.S. 158, 106 L.Ed.2d 134, 109 S.Ct. 2854 (1989).
[23] Pub.L. 101-433, 104 Stat. 978 (1990).
[24] 29 U.S.C.A. § 623(f)(2).
[25] Auerbach v. Board of Education, 136 F.3d 104, 112 (2nd Cir. 1998) (emphasis added).
[26] Id. at 113.
[27] Id. at 114.
[28] See Dominguez v. Eli Lilly Co., 958 F. Supp. 721 (D. Puerto Rico 1997), aff'd. 141 F.3d 1149 (1st Cir. 1998) (plan was available to employee whose age and years of service equaled 76; employee entitled to lump sum payment based on years of service, two bonuses based on salary, and continued participation in the company's medical and dental plans); Auerbach, supra (plan required teacher to retire at end of school year in which teacher first exceeded age of 55 years and had 20 years of credited service; plan provided for payment of $12,500 plus accumulated sick leave); Dittman v. GM-DCD, 941 F. Supp. 284 (D.Conn. 1996), aff'd 116 F.3d 465 (2nd Cir. 1997) (plan provided generous benefits to employees over 50, but was not offered to employees between 40 and 50; employer may set minimum age for eligibility).
[29] 837 F.2d 314 (7th Cir. 1988).
[30] Id. at 316.
[31] Id.
[32] Id. at 318.
[33] Id.
[34] Id. at 320.
[35] Id. at 318.
[36] Id. at 320.
[37] 742 F.2d 465 (8th Cir. 1984).
[38] Id. at 467-68. (In 1998, the statute was renumbered as M.S.A. § 122A.48.)
[39] Id. at 468.
[40] Id.
[41] Id. at 468-69.